[No. B232771. Second Dist., Div. One. June 21, 2012.]

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,
Plaintiff and Respondent, v.
CHARLOTTE RUSSE HOLDING, INC., et al., Defendants and Appellants.

970

COUNSEL

Caldwell Leslie & Proctor, Christopher G. Caldwell, Andrew Esbenshade and Kelly L. Perigoe for Defendants and Appellants.

Lewis Brisbois Bisgaard & Smith, Lane J. Ashley, Raul L. Martinez and Raquel Vidal for Plaintiff and Respondent.

OPINION

CHANEY, J.—Plaintiff and respondent, Travelers Property Casualty Company of America (Travelers), filed this action for declaratory relief seeking a

determination that there was no potential for coverage under its policy, and therefore no duty to defend its insureds, Charlotte Russe Holding, Inc., Charlotte Russe Merchandising, Inc., David Mussafer, Jenny J. Ming, Advent International Corporation, Advent CR Holdings, Inc., and Advent CR, Inc. (the Charlotte Russe parties), in litigation against them by Versatile Entertainment, Inc., and its parent, People's Liberation, Inc. (collectively, Versatile). The trial court agreed with Travelers, and granted its motion for summary judgment. We will reverse the summary judgment.

## BACKGROUND[1]

*Underlying lawsuits by Versatile against the Charlotte Russe parties*

The underlying litigation for which the Charlotte Russe parties sought coverage arises out of pleadings filed by Versatile in litigation against the Charlotte Russe parties. On October 26, 2009, certain of the Charlotte Russe parties sued Versatile alleging claims for fraud, breach of contract, and restitution. On October 27, 2009, Versatile filed an action against those parties, alleging causes of action for breach of contract, declaratory relief, and fraudulent and negligent misrepresentation. Also on October 27, 2009, Versatile filed another action against others of the Charlotte Russe parties, alleging their intentional interference with the contractual relationship between Versatile and Charlotte Russe. And on December 23, 2009, Versatile filed a cross-complaint in the Charlotte Russe parties' action against it.[2]

As relevant here, Versatile's pleadings alleged that the Charlotte Russe parties had contracted in December 2008 to become the exclusive sales outlet for Versatile's " 'People's Liberation' " brand of apparel, which included jeans and knits. Versatile identified the People's Liberation brand as a " 'premium,' " " 'high end' " brand, claiming that it had " 'invested millions of dollars developing the [People's Liberation] [b]rand so that it became associated in the marketplace with high-end casual apparel' " which " 'was distributed . . . exclusively through fine department stores and boutiques . . . .' " (Italics omitted.) Versatile alleged that although Charlotte Russe had never before offered this sort of apparel for sale " 'at a higher price point commanded by a premium brand such as People's Liberation Brand' " (italics omitted), Charlotte Russe had promised to provide the investment and

---

[1] Unless otherwise noted, the facts are taken from those conceded by the parties to be undisputed, and the documents presented by the parties in connection with the summary judgment motion.

[2] Although Travelers's summary judgment motion identifies four sets of pleadings involving the various Versatile and Charlotte Russe parties, because they all contain substantially identical allegations against the Charlotte Russe parties, we discuss them below without specific identification or differentiation.

support necessary to " 'promote the sale of premium brand denim and knit products in order to encourage [Charlotte Russe's] customers to purchase such premium products at a higher price point at its [Charlotte Russe] stores.' " (Italics omitted.) Versatile's pleadings went on to allege that the Charlotte Russe parties had failed to live up to those representations, however, giving rise to its allegation of causes of action for breach of contract, declaratory relief, and fraudulent and negligent misrepresentation.

Specifically, Versatile alleged, the Charlotte Russe parties had threatened, and had begun, " 'the "fire sale" of People's Liberation Branded apparel at "close-out" prices.' " This sale of Versatile's premium brand clothing at severe discounts not only violated the parties' agreement, it alleged, but "will also certainly result in significant and irreparable damage to and diminution of the People's Liberation Brand and trademark." Versatile sought declaratory relief and damages for its losses "as a result of Defendants' breaches, including damage to and diminution of the People's Liberation Brand and trademark which will certainly result from Defendants' 'fire sale' of People's Liberation Branded goods at 'close-out' prices."

During their later correspondence with Travelers, the Charlotte Russe parties informed Travelers that Versatile's discounting claim was factually based on the Charlotte Russe parties' " 'public display of signs in store windows and on clothing racks announcing that People's Liberation brand jeans were on sale,' " as well as on their "written mark-downs on individual People's Liberation clothing items." And in connection with Travelers's summary judgment motion, the Charlotte Russe parties presented evidence of 70 to 85 percent price markdowns of People's Liberation brand clothing, and the opinion of an experienced apparel industry expert that such markdowns and "dramatic price reduction[s], promoted in such a manner, had the potential to have a disparaging effect on the People's Liberation brand," for it suggests to the consumer that the product—particularly "premium, high-end or luxury goods such as the People's Liberation brand products"—is of an "inferior quality."[3]

*The relevant Travelers policies*

The Charlotte Russe parties were covered by two consecutive Travelers policies, from September 30, 2008, to September 30, 2010, providing commercial general liability coverage. Both policies include "personal injury" and

---

[3] The expert went on to opine: "Decreasing the price of certain premium or luxury goods (like People's Liberation brand products) decreases consumers' preference for buying them because they are no longer perceived as exclusive/high status products. . . . '[A] retailer's price reduction disparages the product's "worth"—in terms of reputation, panache, and other modalities of chic—in the eyes of both the market, at large, and potential purchasers, in specific.' "

"advertising injury" liability coverage, with insuring agreements providing that the insurer has a duty to defend the insured against any suit seeking damages for "personal injury" and "advertising injury" claims.

The policies' personal injury coverage applies to " '[p]ersonal injury' caused by an offense arising out of your business, excluding advertising . . . ." Their advertising injury coverage applies to " '[a]dvertising injury' caused by an offense committed in the course of advertising your goods, products or services . . . ." Both provide "broad 'offense-based' coverage" for claims alleging injury arising out of "[o]ral, written, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or 'suit' is brought by the person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged . . . ." The policies exclude coverage for an " 'advertising injury' arising out of a breach of contract." There is no similar exclusion for a personal injury arising out of a breach of contract.

*Travelers denies coverage*

The Charlotte Russe parties tendered the Versatile actions to Travelers for a defense on December 24, 2009.

On May 13, 2010, Travelers notified the Charlotte Russe parties by letter that it was declining to either indemnify or defend them against the claims asserted by Versatile, on the ground that there was no potential for coverage. In the ensuing exchange of correspondence, Charlotte Russe took the position that Versatile's claims involved disparagement within the policies' terms, potentially within the policies' coverage for both personal injury and advertising injury. Travelers maintained that "coverage was not available under its Policies because 'the reduction of a product's price is not . . . a disparagement of that product.' "

*The coverage litigation and Travelers's motion for summary judgment*

On July 29, 2010, Travelers filed a declaratory relief action, seeking a determination that it owed no duty to defend or indemnify the Charlotte Russe parties in the various underlying actions. The Charlotte Russe parties cross-complained for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing, alleging that Travelers's denial of a defense under the liability policies resulted in serious damages.

Travelers moved for summary judgment, contending that the Charlotte Russe parties would be unable to establish a potential for coverage under the

Travelers policies. The motion's key contention was that in order for the Charlotte Russe parties to be eligible for coverage under its policies' personal injury or advertising injury provisions, the claims against them must amount to actionable claims of trade libel. According to Travelers's motion, "under established California law, the allegations in the underlying Versatile litigation against the Charlotte Russe entities must be compared with the elements of the trade libel tort in order to properly assess the potential for coverage under the Travelers' disparagement coverage." The motion contended that a cause of action for trade libel or disparagement requires an allegation of the publication of a false statement and resulting loss of business, and that Versatile's claims against the Charlotte Russe parties alleged neither.

*Travelers is awarded summary judgment; the Charlotte Russe parties appeal*

The trial court heard Travelers's summary judgment motion on March 9, 2011, overruling Travelers's objections to certain of the Charlotte Russe parties' opposing evidence, but granting Travelers's motion. Judgment was entered in Travelers's favor on April 22, 2011, and notice of its entry was filed April 29, 2011. The Charlotte Russe parties filed a timely appeal on May 3, 2011.

## DISCUSSION

The critical question in this appeal is whether Versatile's claims against the Charlotte Russe parties constitute allegations that the Charlotte Russe parties disparaged its goods, within the meaning of the Charlotte Russe parties' coverage under the Travelers policies. If they do not, there was no potential for coverage, and Travelers had no duty to defend.

However, if Versatile's allegations can reasonably be interpreted to encompass claims that the Charlotte Russe parties disparaged its goods, within the meaning of the Travelers policies, there was a potential for coverage under the policies' personal injury coverage, and therefore a duty to defend the Charlotte Russe parties against Versatile's claims in the underlying litigation. Because we conclude that the allegations of the Versatile pleadings could be reasonably interpreted to allege that the Charlotte Russe parties disparaged the People's Liberation brand and led potential purchasers to believe that it was not a "premium," "high end" brand, we will reverse the summary judgment.

1. *Standard of Review*

Summary judgment may be granted only "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law," eliminating the need for a trial of the action. (Code Civ. Proc., § 437c, subd. (c); see *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 741 [41 Cal.Rptr.2d 719].) This court independently determines the legal effect of the documentation underlying the summary judgment motion in the trial court. (*Villa v. McFerren, supra,* 35 Cal.App.4th at p. 741.)

The party moving for summary judgment—Travelers—bears the burden of showing that there is no triable issue of material fact, and therefore that it is entitled to judgment as a matter of law. "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493], fn. omitted.) An issue of fact becomes one of law only if " 'the undisputed facts leave no room for a reasonable difference of opinion.' " (*Preach v. Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1450 [16 Cal.Rptr.2d 320].)

In order to carry its burden of proof, a party moving for summary judgment must first make a prima facie showing that there is an absence of an essential element of, or a complete defense to, the case against it. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 849.) Once the defendant has made that prima facie showing, the burden shifts to the opposing party to show that one or more material facts essential to a cause of action or defense require trial. (Code Civ. Proc., § 437c, subd. (p)(2).) The interpretation, construction, and application of an insurance contract are purely issues of law. (*Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co.* (1996) 42 Cal.App.4th 121, 125 [49 Cal.Rptr.2d 567].)

2. *Versatile's claims give rise to a potential for coverage under the Travelers policy*

a. *Duty to defend*

■ A liability insurer's duty to defend arises when a suit against its insured seeks damages that are potentially within the policy's coverage. (*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 43 [36 Cal.Rptr.2d 100, 884 P.2d 1048].) An insurer has no duty to defend its insured only if the claim against it cannot, by any conceivable theory, raise an issue that would bring it within a policy's coverage. (*Ibid.*) The duty does not depend on the labels given to the causes of action in the underlying claims against the insured; "instead it rests on whether the *alleged facts or known extrinsic facts* reveal a *possibility* that the claim may be covered by the policy." (*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.* (2002) 100 Cal.App.4th 1017, 1034 [123 Cal.Rptr.2d 256] (*Atlantic Mutual*).)

A liability insurer's duty to defend is broader than its duty to indemnify; it therefore may owe a duty to defend its insureds even when a trier of fact might ultimately determine that the policy does not entitle them to indemnity for the claims against them. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300 [24 Cal.Rptr.2d 467, 861 P.2d 1153] (*Montrose Chemical*).) Whether the insurer owes a duty to defend turns not on whether the insured proves to be actually entitled to be indemnified for the underlying claim, but only on " 'those facts known by the insurer at the inception of a third party lawsuit,' " along with facts extrinsic to the complaint that may also " 'reveal a possibility that the claim may be covered by the policy.' " (*Id.* at p. 295.)

■ The insurer's coverage obligation begins whenever the insurer becomes aware of facts giving rise to the potential for coverage, and continues until it has been established that there is no potential for coverage. (*Montrose Chemical, supra*, 6 Cal.4th at p. 295.) In order to prevail on an insurer's motion for summary judgment based on the absence of a duty to defend, "the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.*" (*Id.* at p. 300.) Once the possibility of coverage arises, "[a]ny doubt as to whether the facts establish [or defeat] the existence of the defense duty must be resolved in the insured's favor." (*Id.* at pp. 299–300.)[4]

 b. *The underlying litigation need not allege all elements of a cause of action for trade libel in order to trigger personal injury coverage for product disparagement*

 1. *Coverage may be triggered by implied allegations of disparaging statements*

The Versatile pleadings charged in the underlying litigation that the Charlotte Russe parties had offered the People's Liberation products for sale at severely discounted prices, resulting in "significant and irreparable damage to and diminution of the People's Liberation Brand and trademark," damaging its "marketability and saleability." Travelers contends that these allegations of price discounts do not accuse the Charlotte Russe parties of either product disparagement or false statements, and therefore that they do not trigger the policies' personal injury or advertising injury coverage.[5]

---

[4] Whether Versatile would have been entitled to recover damages encompassing the sorts of losses it alleged to have incurred as a result of the Charlotte Russe parties' conduct (i.e., whether their price markdowns actually disparaged Versatile's products) was not determined, because the underlying litigation was settled in January 2011.

[5] Travelers has argued that advertising injury coverage would in any event be unavailable due to the policies' exclusions for advertising injuries that result from breaches of contract.

In order to trigger personal injury coverage it is not essential that the underlying claims must be expressly phrased in terms of "disparagement" or trade libel, however. (*Atlantic Mutual, supra,* 100 Cal.App.4th at p. 1034.) The underlying claims may trigger a duty to defend if the conduct for which the policies provide coverage is charged by implication, as well as by direct accusation.

In the *Atlantic Mutual* case the policy provided coverage for the insured's publication of material " 'that slanders or libels a person or organization *or disparages a person's or organization's goods, products or services. . . .*' " (*Atlantic Mutual, supra,* 100 Cal.App.4th at p. 1032.) The insured sought coverage for underlying litigation that alleged it had falsely stated to the plaintiff's customers that the plaintiff's products were burdened with patents, and that their purchase of those products would subject them to litigation. (*Id.* at pp. 1024, 1034–1035.) The question therefore was whether the underlying litigation's allegations amounted to claims that the insured had published " 'matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general' "; if so, it "disparaged" the product. (*Id.* at p. 1035.)

The court held in *Atlantic Mutual* that the underlying litigation came within the policy's personal injury coverage because it alleged that the insured had published " 'matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general.' " "The plain language of the Atlantic Mutual policy includes in the definition of 'personal injury' the publication of any oral or written statement that not only slanders or libels but also one that disparages an organization or its goods, products, or services. This amounts to coverage for product disparagement and trade libel as well as defamation." (*Atlantic Mutual, supra,* 100 Cal.App.4th at p. 1035.)

The language of Travelers's policies is the same as that in *Atlantic Mutual,* providing coverage for "publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services . . . ." And here, too, the allegation of disparagement may be implied. The question here, as in *Atlantic Mutual,* therefore is not whether the underlying claims expressly allege that the Charlotte Russe parties disparaged Versatile's products, but whether the allegations may be understood to accuse the Charlotte Russe parties of statements and conduct

---

The Charlotte Russe parties respond that advertising injury coverage remains potentially available, because no breach of contract has been established. We need not address this issue, because (as in the *Atlantic Mutual* case) we find potential coverage under the personal injury provision, to which the breach-of-contract exclusion does not apply. (See *Atlantic Mutual, supra,* 100 Cal.App.4th at p. 1030, fn. 12.)

"that slanders or libels a person or organization or disparages a person's or organization's goods, products or services . . . ."[6]

### 2. *A claim of trade libel is not a prerequisite to personal injury coverage for disparagement*

Travelers contends that "disparagement," in the insurance context, "refers to the tort of trade libel," a tort that requires pleading and proof of a false statement of fact. According to Travelers, coverage therefore is defeated as a matter of law by the underlying pleadings' failure to allege "an injurious false statement disparaging Versatile's products . . . ."

However, Versatile's pleadings alleged that the People's Liberation brand had been identified in the market as premium, high-end goods and that the Charlotte Russe parties had published prices for the goods implying that they were not. It therefore pled that the implication carried by the Charlotte Russe parties' pricing was false. That is enough. (*Atlantic Mutual, supra,* 100 Cal.App.4th at pp. 1034–1035; *Nichols v. Great American Ins. Companies* (1985) 169 Cal.App.3d 766, 774 [215 Cal.Rptr. 416] [statement may constitute product disparagement if plaintiff pleads facts showing the statement's defamatory meaning "by innuendo"]; *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.* (N.D.Cal. 2008) 590 F.Supp.2d 1244, 1253–1254 [insured's claim of superiority of its products necessarily implied inferiority of competitor's products].)

█ Moreover, even if it were true that Versatile's claim against the Charlotte Russe parties could not be viable without alleging all the elements of a trade libel cause of action, as Travelers argues and the trial court apparently concluded,[7] the result here would be no different. The insurer's duty to defend is not conditioned on the sufficiency of the underlying pleading's allegations of a cause of action; that is an issue for which the policy entitled the Charlotte Russe parties to an insurer-funded defense. (*Montrose Chemical, supra,* 6 Cal.4th at p. 298 ["insurer may not decline to defend a suit merely because it is devoid of merit, but instead must assert appropriate defenses on its insured's behalf in the underlying action"]; *Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 510 [108

---

[6] "[T]he language employed [is] to be regarded . . . according to the sense and meaning under all the circumstances attending the publication which such language may fairly be presumed to have conveyed to those to whom it was published. So that in such cases the language is uniformly to be regarded with what has been its effect, actual or presumed, and its sense is to be arrived at with the help of the cause and occasion of its publication." (*Bettner v. Holt* (1886) 70 Cal. 270, 274 [11 P. 713].)

[7] The trial court stated during argument that "[t]here is no trade libel alleged because there is no claim that there was a false statement."

Cal.Rptr.2d 657].) "The fact that [the insurer] may have known of a good defense, even an ironclad one, to the [underlying] claim did not relieve it of its obligation to defend its insured." (*CNA Casualty of California v. Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 609, fn. 4 [222 Cal.Rptr. 276].)[8]

 Finally, we cannot rule out the possibility that Versatile's pleadings could be understood to charge that the dramatic discounts at which the People's Liberation products were being sold communicated to potential customers the implication—false, according to Versatile—that the products were not (or that the Charlotte Russe parties did not believe them to be) premium, high-end goods. Arguably, a trade libel claim might survive under these theories. According to the comments to the Restatement Second of Torts, the concept of trade libel encompasses "a statement in the form of an opinion, if the statement implies the existence of undisclosed facts that justify the opinion. . . ." (Rest.2d Torts, § 626, com. c, p. 346; see *Atlantic Mutual, supra,* 100 Cal.App.4th at pp. 1024–1025, fn. 3 [allegation that insured asserted patent carries implication of false statement that competitor was infringing patent.)

### 3. The policy language does not require pleading or proof of a trade libel tort

We find no suggestion in the language of the policy's personal injury coverage that a prerequisite to establishing a potential for personal injury coverage for disparagement is that the accusations against its insured must include all the essential elements of the trade libel tort (whatever those requirements may be). Rather, the policy language is inconsistent with that contention.

The claims asserted by Versatile were sufficient to raise reasonable inferences that the Charlotte Russe parties had disparaged the People's Liberation products and brand, within the meaning of the policy language. As noted above, that language provides personal injury coverage for "publication of material that slanders or libels a person or organization *or* disparages a person's or organization's goods, products or services . . . ." (Italics added.) That phraseology makes coverage for disparagement an alternative to coverage for libelous materials, not an element of that coverage. Under it, the

---

[8] We do not share Travelers's certainty that a claim of objective falsity is in all circumstances an essential element of the tort of trade libel. The cases it cites for this proposition involve or discuss both disparagement and trade libel—but none of them hold, in the context of insurance coverage for disparagement, that the concepts are interchangeable or inextricably linked. (E.g., *Microtec Research v. Nationwide Mutual Ins. Co.* (9th Cir. 1994) 40 F.3d 968, 972; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010 [113 Cal.Rptr.2d 625]; *Polygram Records, Inc. v. Superior Court* (1985) 170 Cal.App.3d 543, 548 [216 Cal.Rptr. 252]; *Nichols v. Great American Ins. Companies, supra,* 169 Cal.App.3d at p. 773; *Total Call Internat., Inc. v. Peerless Ins. Co.* (2010) 181 Cal.App.4th 161, 169 [104 Cal.Rptr.3d 319].)

policy covers publication of material *either* that slanders or libels a person or organization, *or* that disparages a person's or organization's goods, products or services; both are not required.

## CONCLUSION

█ Coverage is triggered under this policy language by a claim that the insureds published material that disparages a person's or organization's goods, products or services, whether trade libel is or is not an element of that claim. Because the Versatile claims against the Charlotte Russe parties could reasonably be interpreted to constitute a claim of product disparagement resulting in damage to their People's Liberation brand, those claims are sufficient to trigger Travelers's obligation to provide the Charlotte Russe parties with a defense. The trial court therefore erred in granting summary judgment to the contrary.

## DISPOSITION

The judgment is reversed. Appellants are awarded their costs on appeal.

Rothschild, Acting P. J., and Johnson, J., concurred.

A petition for a rehearing was denied July 31, 2012, and respondent's petition for review by the Supreme Court was denied September 26, 2012, S204781. Corrigan, J., did not participate therein.