Filed 10/1/13; pub. order 10/16/13  (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SAN MIGUEL COMMUNITY ASSOCIATION et al., | |
| Plaintiffs and Appellants, | G047738 |
| v. | (Super. Ct. No. 30-2011-00478236) |
| STATE FARM GENERAL INSURANCE COMPANY, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Ronald L. Bauer, Judge.  Affirmed.

Samuels, Green & Steel, Orlando F. Cabanday and Frederick H. Choi for Plaintiffs and Appellants.

LHB Pacific Law Partners, Michael J. McGuire and Matthew F. Batezel for Defendant and Respondent.

\*          \*          \*

Question: When an insurance company issues a liability policy, agreeing to indemnify its insured against a third party claim for damages covered under the policy, and to defend the insured against any such claim, does the insurer have a duty to defend the insured against a third party lawsuit seeking injunctive relief but no compensatory damages? Answer: No. The third party's failure to seek compensatory damages against the insured means the dispute is not a claim for damages under the policy. The insurer's defense obligation requires it to provide the insured with a defense *against a claim seeking damages potentially payable under the policy*, not to defend the insured's honor or otherwise assist it in resolving a nonmonetary dispute.

Here, appellants San Miguel Community Association and William Beggs sued State Farm General Insurance Company, alleging it breached obligations to them under a liability insurance policy by refusing to reimburse them for the cost of defending the early stages of a lawsuit in which the plaintiffs had initially sought only injunctive relief to enforce parking restrictions within the community, plus an award of punitive damages. When the third party plaintiffs later amended their pleading to include a claim for recovery of compensatory damages, State Farm agreed to assume appellants' defense, but refused to reimburse it for any defense costs incurred prior to the amendment. The trial court entered summary judgment in favor of State Farm.

Appellants challenge the judgment, arguing State Farm had an obligation to provide them with a defense even in absence of any express claim for damages in the earlier versions of the third party complaint, because those earlier versions *implied* the third parties had suffered compensable damages as a result of appellants' wrongdoing and thus demonstrated appellants had potential liability for damages covered under the policy. We affirm.

In the abstract, it is irrelevant that the third party might have suffered harm that could give rise to a claim for damages covered under the insured's policy. What matters is whether the third party has *sought to recover* damages from the insured. It is

2

only when the third party does that, that it has it made a claim which triggers even potential coverage under a liability policy. That did not occur here until the third party plaintiffs amended their pleading to include a claim for compensatory damages. Finally, because coverage is triggered by a third party claim for damages, the allegation that State Farm also misrepresented that the attorney for the third parties had denied they *sustained* damages adds nothing to the cause of action. Whether or not those third parties believed they had *sustained* damages, the record demonstrates they made no effort *to recover* any from appellants until their second amended complaint.

FACTS

San Miguel, a nonprofit residential community association, is the named insured under the State Farm policy at issue in this case and Beggs is the president of San Miguel's board of directors. State Farm's policy provided San Miguel with "comprehensive business liability" coverage. Under that coverage, State Farm agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury" caused by an "occurrence."

The policy defined an "occurrence" as either "an accident . . . which result[s] in bodily injury or property damage," or "the commission of an offense, or a series of similar or related offenses, which results in personal injury or advertising injury." And the policy defined "property damage" as: (1) "physical injury to or destruction of tangible property, including all resulting loss of use of that property . . . [; and (2)] [¶] loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property. . . ."

3

The policy also offered optional coverage for "Directors and Officers Liability," which was defined as "those sums the insured becomes legally obligated to pay as damages because of 'wrongful acts' committed by an insured solely in the conduct of their management responsibilities for the Condominium/Association." "Wrongful acts" was defined as "any negligent acts, errors, omissions or breach of duty directly related to the operations of the Condominium/Association." However, the Directors and Officers Liability coverage did not apply to "any dishonest, fraudulent, criminal or malicious act, including fines or penalties resulting from these acts"; did not apply to "bodily injury, property damage, personal injury or advertising injury liability"; or "damages other than monetary damages."

Additionally, State Farm agreed to "defend any claim or suit *seeking damages payable under this policy* even though the allegations of the suit may be groundless." (Italics added.) A "suit" is defined as "a civil proceeding in a court of law in which damages . . . to which this insurance applies *are alleged*," and includes "an arbitration proceeding in which such damages *are claimed*" and "any other alternative dispute resolution proceeding in which such damages *are claimed* and to which you submit with our consent." (Italics added.)

The underlying suit arose out of a dispute regarding enforcement of parking restrictions within the San Miguel community. The third party plaintiffs are two San Miguel residents who briefly served as members of its board of directors. During their tenure on the board, these plaintiffs sought enforcement of parking restrictions within the community, and promulgated new policies governing parking. They were later recalled from the board in an election which also resulted in Beggs becoming a board member. The newly comprised board of directors rescinded the parking policies.

In late 2008, the third party plaintiffs began complaining at board meetings that San Miguel was not enforcing the parking restrictions contained in the community's governing Declarations, Conditions, Covenants and Reservation of Easements (CC&R's)

4

and that the failure to do so was causing the plaintiffs distress and affecting their property values. The plaintiffs also alleged they had incurred out-of-pocket costs (in the form of copying costs and fees) as part of their effort to persuade the board to enforce the CC&R's.

San Miguel rejected the plaintiff's complaints, and in December 2008, the plaintiffs made a demand for nonbinding mediation of the dispute concerning enforcement of the CC&R's. The notice identified several issues to be addressed in the mediation, but did not identify any damages allegedly suffered by plaintiffs, or demand compensation. After receipt of the plaintiff's alternate dispute resolution (ADR) demand, San Miguel tendered its defense to State Farm.

The plaintiffs' attorney testified in deposition that if he had been asked in December 2008 about damages, he would have said that the "gravamen" of plaintiffs' complaint "would have been to fix the wrongs that were occurring." While he had done an analysis of money damages stemming from San Miguel's violation of the CC&R's, and concluded there were "loss-of-use damages" and "postage damages," he concluded they "were not of a significant amount." He stated that "*my clients weren't actually looking for a payout on those monetary damages . . .* as much as they were looking for the injunctive relief to correct the problems that were occurring." (Italics added.)

Upon receipt of the ADR demand, a State Farm representative noted in the claim file that it was "[u]nclear if [the] demand for non-binding mediation seeks either [bodily injury, property damage, personal injury or advertising injury] under Cov. L; or money [damages] under [optional directors and officers]. The allegations are vague as to resulting [damages] or prayer for relief." The representative also noted that a letter from the plaintiffs' attorney outlining their claims includes "no mention of money [damages.]" A State Farm supervisor suggested to the claims representative that he find out "what other information [San Miguel] has about this matter that could shed some light on the

5

nature of the damages claim. You may also need to talk with the plaintiff attorney about this."

According to the State Farm claim file, the representative spoke to the plaintiffs' attorney on January 27, 2009. The file reflects that in addition to providing other information about the claim, the attorney indicated the plaintiffs "have not suffered any [personal injury] at this time or out of pocket expense." The plaintiffs' attorney testified he did not recall that "first conversation" with the State Farm representative in January 2009, although he did not specifically deny it occurred. He did note it was his usual practice not to take calls from insurance company representatives who were not attorneys.

On January 29, State Farm sent San Miguel a letter stating it was continuing to investigate the claim and was reserving its rights to deny coverage. On March 9, State Farm's claim representative recommended denial of the claim, based on the fact the plaintiffs had asserted no claim for damages covered by the policy, and on March 23, State Farm formally denied the claim on that basis. The letter explained there was no coverage under the business liability policy because "the claimants' allegations involve alleged failure of the Association to enforce parking regulations, replace fire signage, or the Association's failure to provide notice of election results. Such claims do not qualify as bodily injury, property damage, personal injury or advertising injury . . . ." As for coverage under the optional directors' and officers' coverage, the letter noted "the claims do not seek recovery of money damages."

The nonbinding mediation did not resolve the matter, and in April 2009 the plaintiffs filed their initial complaint against Beggs only, alleging causes of action for breach of the CC&R's and nuisance, and seeking injunctive relief. Although the cause of action for nuisance included an allegation that Beggs' conduct was "intentional and/or grossly willful," and "despicable" and on that basis justified an award of punitive

6

damages, it neither alleged the plaintiffs' sustained, nor sought recovery of, any compensatory damages.

Beggs once again submitted the claim to State Farm, but before State Farm had taken formal action on the claim, the plaintiffs filed their first amended complaint. In that amended complaint, the plaintiffs added San Miguel as a defendant, and added a third cause of action for breach of fiduciary duty.

Again, the First Amended Complaint contained no allegation the plaintiffs' sustained compensatory damages as a result of defendants' alleged wrongs, nor sought recovery of any such damages. Instead, it alleged the effect of the defendants' violations of the CC&Rs was to cause them "*irreparable injury* due [to] the actions alleged herein and depriv[e] them of the benefit of the CC&Rs" which "cannot be fully compensated in damages." (Italics added.) Hence, the sole remedy the plaintiffs sought for the alleged breach of the CC&R's was an injunction. In their nuisance cause of action, the plaintiffs again claimed they "cannot be fully compensated for the damages caused" and were "without an adequate remedy at law," and they again sought the remedy of an injunction. In their cause of action for breach of fiduciary duty, the plaintiffs alleged they "have been harmed" by defendants' breaches, but again "cannot be fully compensated for the damages caused" and again characterized the harm as "irreparable" and sought an injunction. And once again, the plaintiffs included an allegation that defendants' conduct was intentional and despicable, and on that justified an award of punitive damages.

San Miguel again tendered the defense of the first amended complaint to State Farm, and on May 26, 2009, State Farm denied the claim. Once again, State Farm based its denial on the fact "the action does not seek damages that would be covered under the policy."

San Miguel demurred to the plaintiffs' first amended complaint and moved to strike the punitive damages allegation on the basis the plaintiffs had failed to allege any entitlement to compensatory damages. In opposition to the demurrer, the plaintiffs

argued they could amend the complaint to allege entitlement to an award of such damages, including "'diminution in value to Plaintiff[s]' homes and annoyance'" caused by San Miguel's failure to enforce the parking regulations, and costs incurred by plaintiffs in attempting to resolve the matter short of litigation. The court sustained the demurrer with leave to amend, and the plaintiffs filed their second amended complaint in August 2009.

The second amended complaint alleged for the first time that as a result of San Miguel's alleged wrongs, the plaintiffs had sustained damages "in an amount to be proved at trial or . . . nominal damages to the extent necessary." In their prayer for relief, the plaintiffs sought, in addition to declaratory and injunctive relief, an award of "compensatory damages, according to proof at the time of trial or alternatively . . . an award of nominal damages."

San Miguel once again tendered the claim to State Farm, pointing out that "unlike the previous complaints, [the second amended complaint] seeks damages." State Farm once again denied coverage. In its letter, State Farm stated "plaintiffs have made no claims for money damages," and pointed out "[n]ominal damages are not money damages arising out of a wrongful act." State Farm also reiterated in its letter that the plaintiffs' attorney had advised State Farm the plaintiffs had incurred no out-of-pocket costs. The letter did not state when the plaintiffs' attorney had made that statement.

However, San Miguel's attorney apparently interpreted State Farm's denial letter as reflecting a statement made by the plaintiffs' attorney *following the filing of the second amended complaint*. He thus contacted the plaintiffs' attorney and inquired whether the attorney had denied to State Farm that plaintiffs had incurred damages in connection with the second amended complaint. According to a confirming letter written by San Miguel's attorney, the plaintiffs' attorney replied that he had not spoken to anyone from State Farm *within the past three to four months* and reiterated that his clients had incurred the damages as set forth in the second amended complaint. San Miguel's

8

attorney then wrote a letter to State Farm, informing it that the plaintiffs' attorney was in fact claiming they had incurred compensable damages, and accusing State Farm of making a "material misstatement[] of fact to support its letter declining . . . tender."

A State Farm representative then contacted the plaintiffs' attorney. The attorney did recall that conversation, which he described as "a second phone call I believe I did have with [a State Farm representative], after I had been advised . . . that apparently there was a claim we had made some sort of an admission there were no damages. Which was not our position. [¶] Our position was the monetary damages were de minimus, but there are damages." The attorney acknowledged that "[i]t may be an issue that those damages will go away if we settle the main part of the action, but not that they don't exist." He stated, however, that he had no recollection of what he actually told the representative during that second call, "and I probably hung up on the gentleman."

Following that conversation, State Farm reversed its decision and agreed to provide San Miguel with a defense of the plaintiffs' lawsuit under a reservation of rights. However, it concluded that its obligation to provide a defense commenced on August 27, 2009, when San Miguel tendered the second amended complaint – the first complaint seeking recovery of compensatory damages and thus the first to reflect the potential for coverage under the policy. Consequently, State Farm refused to compensate San Miguel for the costs incurred in defending the underlying case prior to that time.

This lawsuit followed. San Miguel alleged a cause of action for breach of the insurance contract, and a cause of action for breach of the covenant of good faith and fair dealing. Both causes of action were based on the identical assertions that State Farm had breached its obligations by (1) failing to pay for defense of the plaintiffs' underlying claim prior to the filing of their second amended complaint, and (2) misrepresenting the statements of the plaintiffs' attorney concerning their purported lack of damages in an effort to avoid paying benefits under the policy. San Miguel specifically alleged the plaintiffs' complaint in the underlying lawsuit *had included a claim for money damages*

9

within the coverage of the optional Directors and Officers Liability provision of State Farm's policy from the outset, and thus that State Farm was obligated to pay the cost of defending that suit from the outset. State Farm successfully moved for summary judgment, and the court entered a final judgment in its favor.

## DISCUSSION

We employ a de novo standard of review on appeal from a summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) We are not bound by the trial court's stated reasons for granting summary judgment, and will affirm the judgment if correct on any theory advanced. "The trial judge's stated reason for granting summary judgment is not binding on us because we review its ruling, not its rationale." (*Reliance Nat. Indemnity Co. v. General Star Indemnity Co.* (1999) 72 Cal.App.4th 1063, 1074.)

In our analysis, "[w]e apply the same three-step analysis required of the trial court. First, we identify the issues framed by the operative complaint and answer since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing establishes facts which negate the opponent's claim and justifies a judgment in the moving party's favor. When the moving party makes a prima facie showing, the third and final step is to determine whether the opposition demonstrates the existence of a triable issue of material fact. [Citation.] [¶] In performing these steps, we view the evidence in the light most favorable to the party opposing the motion, liberally construe the opposing party's evidence, strictly construe the moving party's evidence, and resolve all doubts in favor of the opposing party." (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 444.)

State Farm's motion for summary judgment was based on the assertion that the policy it issued to San Miguel did not obligate it to provide a defense to any claim

10

unless "covered damages" were sought, and that contrary to San Miguel's allegation, no such damages had been sought by the plaintiffs in the underlying case until they filed their second amended complaint. The trial court agreed with that analysis, despite San Miguel's vigorous assertion that a claim for covered damages was implicit in the earlier versions of the complaint.

*1. Implied Claim for Recovery of Damages in the Underlying Case*

On appeal, San Miguel does not dispute that a claim for covered damages by the third party plaintiffs was necessary to trigger State Farm's duty to defend under the policy. That is appropriate, as the policy clearly specifies the obligation to defend applies to "any claim or suit *seeking damages payable under this policy* even though the allegations of the suit may be groundless." (Italics added.) As pointed out in *United Pacific Ins. Co. v. Hall* (1988) 199 Cal.App.3d 551, 556, "[w]here the language of an insurance policy plainly obligates an insurer to *defend an action for damages against the insured*, the insurer has no obligation to defend an insured in . . . proceedings *where damages are not sought*."

Instead, San Miguel essentially repeats the argument it made below, and indeed characterizes the main question to be resolved on appeal as: "Do the [underlying plaintiffs'] allegations asserting claims for nuisance, breach of fiduciary duty, irreparable damage, and praying for punitive damages, which in turn would require proof of actual damages, give rise to *the implication of actual damages* and [thus] obligat[e] State Farm to defen[d] the claims?" (Italics added.)

San Miguel's argument that a claim for actual damages was implied in the allegations of the underlying case relies significantly on *Travelers Property Casualty Co. of America v. Charlotte Russe Holding, Inc.* (2012) 207 Cal.App.4th 969 (*Travelers*). According to San Miguel, *Travelers* stands for the proposition that an insurer "shall [infer] the elements necessary to find a possibility of coverage and may not decline a defense simply because the pleading does not *expressly state* the conditions for

11

coverage." (Italics added.) In our view, however, *Travelers* expresses a different rule, and is thus inapposite.

*Travelers* involved a third party claim made by a clothing manufacturer, which alleged that the insured, a retailer, had harmed the manufacturer's brand reputation by severely discounting the manufacturer's clothing in its stores. The retailer sought insurance coverage for the dispute on the theory that the allegations amounted to a claim the retailer had *disparaged* the manufacturer's goods. While the trial court rejected the argument, the Court of Appeal did not. The court explained "it is not essential that the underlying claims must be *expressly phrased* in terms of 'disparagement' or trade libel" in order to trigger coverage. (*Travelers, supra,* 207 Cal.App.4th at 978.) Rather, it was sufficient if the third party allegations "may be understood to accuse" the retailer of such conduct. (*Ibid*.)

In other words, *Travelers* reminds us we cannot strictly construe the allegations of a third party complaint, and allow the insurer to deny coverage merely because those existing allegations *are not phrased* in strict accordance with the language of the policy. Thus, *Travelers* merely reinforces the well-established notion espoused in *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276-277, that an insurer "cannot construct a formal fortress of the third party's pleadings and retreat behind its walls. The pleadings are malleable, changeable and amendable. . . . [C]ourts do not examine only the pleaded word but the potential liability created by the suit. . . . [¶] . . . [¶] . . . An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy."

But what *Travelers* does not do is what San Miguel claims: establish a rule that insurers must infer *the existence of additional allegations* not actually included within the underlying third party complaint, merely because it is aware those additional claims might have been plausibly included. And that is what San Miguel is arguing for here.

12

In effect, San Miguel is asserting that because the third party plaintiffs in the underlying case purportedly sustained some actual damage as a result of San Miguel's alleged wrongs – albeit in an amount that plaintiffs' own attorney characterized as "de minimus" – and thus *could have* sought recovery of those damages from San Miguel in earlier pleadings, State Farm was obligated to infer they had actually done so. We reject the assertion.

First, we note that in their earlier pleadings, the third parties' description of the alleged harm inflicted on them by San Miguel was actually inconsistent with the implication they were seeking money damages. They characterized that harm as "irreparable," and they purported to be "without an adequate remedy at law" to redress it. Standing alone, such allegations imply that an award of money damages is not sought, because monetary damages are the quintessential remedy at law. Further, as our Supreme Court has explained: "*irreparable* injuries [are] ones that cannot be adequately compensated in damages." (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1352.) Until the plaintiffs filed their second amended complaint, expressly claiming a right to recover compensatory damages flowing from San Miguel's wrongs, there was no reason to infer that any such claim was intended.

Second, we reject San Miguel's claim that the underlying plaintiffs' request for punitive damages in the earlier pleadings necessarily implied that an award of compensatory damages – a prerequisite for the desired punitive damages – was also being sought in those complaints. In general, whether such damages *are sought* can be discerned from the face of the complaint. Just as the plaintiffs' first two complaints clearly *sought* punitive damages – they just as clearly *did not seek* compensatory ones. And the fact that the plaintiffs' claim for punitive damages was flawed in the earlier complaints does not require anyone to infer they pleaded something different than they did. If defendants (and courts) were required to *infer* the existence of allegations missing

13

from a complaint merely because those allegations are necessary to the success of a claim, there would be little purpose to demurrers.

And of course, San Miguel did demur – and successfully – to the first amended complaint in the underlying case, pointing to the plaintiffs' failure to seek actual damages as a significant flaw in both their claim for punitive damages and their cause of action alleging breach of fiduciary duty. Clearly, then, San Miguel did not "infer" the missing allegations already existed in the first amended complaint. State Farm was not obligated to do so either.

And third, the testimony offered by the plaintiffs' attorney supports the conclusion they *were not* initially seeking an award of covered damages in the underlying case – expressly or impliedly. While the attorney completed a damage analysis very early in the dispute, his conclusion was that the damages incurred by the plaintiffs "were not of a significant amount." At another point, he described their damages as "de minimus." Perhaps more important, the attorney made it clear that the plaintiffs' goal – the "gravamen" of their underlying case – was to obtain *injunctive relief*, and he thus acknowledged that the plaintiffs "*weren't actually looking for a payout on those monetary damages . . . .*" (Italics added.) And even when the plaintiffs' attorney finally did include a claim for compensatory damages in their second amended complaint, in an attempt to shore up their other challenged claims, he was refreshingly honest in acknowledging that the damages they were entitled to recover might only be "nominal." (See *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1006 ["The award of only nominal damages highlighted the plaintiff's failure to prove actual injury or any basis for awarding punitive damages"]; *Silk v. Feldman* (2012) 208 Cal.App.4th 547, 556 ["In the absence of proof of actual damages, nominal damages are awarded"].)

In light of the foregoing, we conclude San Miguel failed to demonstrate the existence of even a triable issue of fact to support its contention that the plaintiffs in the

14

underlying case were *seeking an award of damages* that might be covered by State Farm's policy prior to the filing of their second amended complaint – and thus failed to demonstrate State Farm had any obligation to provide San Miguel with a defense in the underlying case prior to that time.

### 2. *The Alleged Misrepresentation*

San Miguel's second contention is that State Farm's attempt to avoid coverage by "making up the phone call" in which the attorney for the plaintiffs in the underlying case purportedly stated they had sustained no damages, constitutes actionable bad faith and thus precluded summary judgment in State Farm's favor. We find the contention unpersuasive for several reasons.

First, we find no evidence in the record that the phone call was "made up." The evidence in the record demonstrates State Farm's case file reflects that one of its representatives spoke to the plaintiffs' attorney in December 2008, when the case was in the early ADR stage, and the attorney's position was that his clients "have not suffered any [personal injury] at this time or out of pocket expense." While the attorney later testified he did not remember the call, and that his belief at the time was that his clients had suffered some "de minimus" amount of damages, he did not actually deny *having the conversation*. Moreover, in a conversation with San Miguel's counsel in the wake of his filing the second amended complaint in August 2009, the attorney stated he had not spoken with a State Farm representative about the case *in the past three to four months* – thus implying he had spoken to one at a prior date.

It was San Miguel's counsel who assumed – apparently erroneously – that the statement contained in State Farm's letter denying a defense for the second amended complaint in the underlying case, to the effect that the plaintiffs' attorney denied they had sustained damages, referenced a *new* denial. But the letter does not specify the date of the attorney's statement, and does not reflect there were multiple conversations with the plaintiffs' attorney. In short, a careful reading of the letter does not support the idea that

15

State Farm made any misrepresentations about having a conversation with the attorney for the plaintiffs in the underlying case.

Second, even if the phone call took place, but the State Farm representative mischaracterized what the attorney said, we could not find a triable issue of fact. San Miguel points to evidence in the record suggesting the State Farm representative who initially spoke to the plaintiffs' attorney did not specifically ask him about whether they incurred damages, but instead inferred they had none from the attorney's description of their "asserted claims." Based on the attorney's later testimony about the plaintiffs' claims, and the relief they were seeking at that time, this was an accurate inference. As the attorney explained, the plaintiffs' "out of pocket" damages were insubstantial, and they were not making any effort to recover them. Instead, what the plaintiffs wanted from San Miguel was enforcement of the CC&R's. From the insurance company's perspective, the third party's disavowal of any *claim for damages* is tantamount to an acknowledgement they have sustained none. The inaccuracy, if any, was insignificant.

Third, the fact State Farm did not engage in significant additional efforts to investigate the claim following the initial phone call to the plaintiffs' attorney creates no triable issue of fact. Although there was evidence suggesting the plaintiffs had *sustained* some miniscule amount of compensable damage, the record is absolutely clear they were making no effort *to recover* those damages from San Miguel prior to the filing of their second amended complaint. Moreover, that damage claim was made only after San Miguel backed the plaintiffs into a corner by demurring to the first amended complaint, and even then, the plaintiffs acknowledged that the damages they sought might be purely nominal. There is simply no evidence that if State Farm had engaged in a more rigorous investigation, it would have led to any conclusion other than that no covered claim existed until the plaintiffs in the underlying case filed their second amended complaint.

Finally, San Miguel's claim for liability based on State Farm's alleged bad faith in manufacturing evidence fails for the most basic reason of all: As our Supreme

16

Court held in *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, a claim for liability based on an insurer's alleged breach of the implied covenant of good faith and fair dealing cannot be maintained unless the insured was entitled to coverage under the insurer's policy. As the Court explained, "when benefits are due an insured, 'delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because' they frustrate the insured's right to receive the benefits of the contract in 'prompt compensation for losses.' [Citation.] Absent that contractual right, however, the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.'" (*Id.* at p. 36.)

Here, because the plaintiffs in the underlying case were not seeking damages against San Miguel prior to the filing of their second amended complaint, there was no potential for coverage under State Farm's policy prior to that filing, and thus no contractual requirement that it provide San Miguel with a defense. It consequently follows that even if State Farm had engaged in questionable tactics to support the denial of San Miguel's claim in the early stages of the underlying litigation, those tactics would not provide a basis upon which to impose liability for breach of the covenant of good faith and fair dealing. We find no error in the trial court's grant of summary judgment in State Farm's favor.

17

DISPOSITION

The judgment is affirmed.  State Farm is to recover its costs on appeal.


RYLAARSDAM, ACTING P. J.

WE CONCUR:


MOORE, J.


IKOLA, J.

Filed 10/16/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SAN MIGUEL COMMUNITY ASSOCIATION et al., <br><br>    Plaintiffs and Appellants, <br><br>      v. <br><br> STATE FARM GENERAL INSURANCE COMPANY, <br><br>    Defendant and Respondent. | G047738 <br><br> (Super. Ct. No. 30-2011-00478236) <br><br> ORDER CERTIFYING OPINION FOR PUBLICATION |

Defendant and Respondent, State Farm General Insurance Company, requested that our opinion filed on October 1, 2013, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED. The opinion is ordered published in the Official Reports.

RYLAARSDAM, ACTING P. J.

WE CONCUR:


MOORE, J.


IKOLA, J.