Filed 9/29/20; Certified for Partial Publication 10/28/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| AUBURN WOODS I HOMEOWNERS ASSOCIATION et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> STATE FARM GENERAL INSURANCE COMPANY et al., <br><br> Defendants and Respondents. | C085749 <br><br> (Super. Ct. No. SCV0036315) |

Auburn Woods I Homeowners Association (HOA) and its property manager Frei Real Estate Services (FRES) tendered the defense of two lawsuits filed against them by a member of HOA under HOA's condominium/association policy. HOA's insurer, State Farm Insurance Company (State Farm), denied the tender for the first lawsuit. It

1

accepted the defense of the second lawsuit as to HOA only. HOA and Al Frei, individually and doing business as FRES, sued State Farm and its agent Frank Lewis for, among other things, breach of contract and breach of the implied covenant of good faith and fair dealing. (We will refer to Al Frei and FRES collectively as Frei and to Al Frei as Mr. Frei.) The trial court entered judgment in favor of State Farm and Lewis and against HOA and Frei following a bench trial.

HOA and Frei now contend (1) the trial court erred in concluding that State Farm did not owe a duty to defend HOA and FRES against the first lawsuit; (2) HOA had a reasonable expectation that FRES would be covered under the directors and officers liability provision of its policy; (3) State Farm failed to reimburse HOA for post-tender expenses related to the second lawsuit; (4) Lewis breached his contract with HOA by failing to include FRES as an additional insured and failing to alert HOA and Frei that it was not possible to include FRES under the directors and officers liability provision; (5) State Farm breached the covenant of good faith and fair dealing implied in HOA's policy; and (6) the trial court erred in denying HOA and Frei's motion to tax the expert witness fees State Farm and Lewis sought to recover under Code of Civil Procedure section 998 (section 998).

We conclude (1) State Farm did not have a duty to defend HOA and FRES against the first lawsuit; (2) HOA and Frei fail to establish that FRES should be deemed an insured under the directors and officers liability provision; (3) substantial evidence supports the trial court's finding that HOA did not present State Farm with a clear statement of the amount of attorney's fees and costs HOA incurred in defending against the second lawsuit; (4) HOA and Frei do not establish the alleged contract between Lewis and HOA; (5) HOA and Frei fail to demonstrate error with regard to their breach of implied covenant cause of action; and (6) State Farm and Lewis's pretrial offer to compromise was effective to trigger cost shifting under section 998.

We will affirm the judgment and the second amended judgment.

2

BACKGROUND

HOA is a nonprofit mutual benefit corporation organized to perform specified functions for a condominium development located in Auburn, California. FRES was the property manager for HOA from 2009 through 2014. FRES took over handling the day-to-day affairs of HOA in January 2009. Ashley Budelli and Vanessa Machen, employees of FRES, managed HOA. Al Frei owned FRES.

The association management agreement between HOA and FRES required HOA to defend and indemnify FRES against any claim, liability, judgment, cost or expense suffered as a result of FRES's performance under the agreement, except for willful misconduct or gross negligence. The agreement required FRES to solicit proposals for all of HOA's insurance needs and HOA to name FRES as an additional insured on HOA's liability and directors and officers insurance policies.

From at least January 11, 2007 through 2015, HOA insured its condominium development under a condominium/association policy with State Farm, through State Farm agent Frank Lewis. Al Frei did not discuss any insurance issue with the previous property manager when management of HOA was transferred to FRES. Although he was unfamiliar with State Farm's condominium/association policy, Mr. Frei did not speak with anyone at HOA about whether the State Farm policy met HOA's insurance requirements. There was conflicting testimony about whether in 2009 Mr. Frei sent Lewis letters inquiring about whether HOA's property manager was an additional insured under HOA's policy. But Mr. Frei testified he did not call Lewis when he did not receive a response to his 2009 letters.

Budelli spoke to Marianne Bruns at Lewis's office in about January 2009, but at trial, Budelli could not recall what they spoke about. Budelli did not recall whether she asked Bruns to include FRES as an additional insured on HOA's policy. Bruns testified that Budelli did not ask Bruns to add FRES as an additional insured on HOA's policy.

3

FRES community association manager Machen was not aware of any request to add FRES to HOA's insurance policy before 2014.

On July 15, 2013, Marva Beadle filed a complaint against HOA, FRES and Allied Trustee Services for declaratory relief, injunctive relief and an accounting. Beadle owned a condominium unit within HOA. Her complaint alleged that Allied Trustee Services recorded a notice of default and election to sell her property based on unpaid HOA fees. Beadle alleged the amount purportedly owed was unreasonable and incorrect. There were "deliberately manufactured" discrepancies in Beadle's "HOA account." According to Beadle, the actual amount of money Beadle owed to FRES and Allied Trustee Services was in dispute and could not be determined without an accounting, and Allied Trustee Services did not comply with Civil Code section 2924, subdivision (f) in recording a notice of trustee's sale.

Beadle's complaint further alleged that Allied Trustee Services would sell Beadle's property on July 17, 2013, unless restrained. Sale of the property would cause Beadle great and irreparable injury, Beadle had no other plain, speedy or adequate remedy, and injunctive relief was necessary to prevent the loss of Beadle's property, which loss would result in a $50,000 profit for "opposing parties" as the actual HOA fees owed were less than $2,000. Beadle requested (1) a declaration that Allied Trustee Services had no right to conduct a trustee's sale and Beadle did not breach the covenants, conditions and restrictions (CC&Rs) for HOA; (2) an injunction preventing the sale of Beadle's property; (3) an accounting to determine the amount Beadle actually owed defendants; (4) attorney's fees and costs; and (5) such other and further relief as the court may deem just and proper.

HOA and FRES tendered the defense of the Beadle action to State Farm under HOA's condominium/association policy. The policy included a comprehensive business liability (Coverage L) provision and an optional directors and officers liability (Option DO) provision. Under Coverage L, State Farm agreed to "pay those sums that the

4

insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury to which" the policy applied. Coverage L obligated State Farm "to defend any claim or suit seeking damages payable under [the] policy even though the allegations of the suit may be groundless, false, or fraudulent." Under Option DO, State Farm agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'wrongful acts' committed by an insured solely in the conduct of their management responsibilities for the Condominium/Association."

Mark Hattersley, a State Farm duty to defend claim representative, reviewed HOA and FRES's claim. He reviewed the Beadle complaint and spoke with Machen and Natalie Vance, counsel for HOA, FRES and Allied Trustee Services. Vance informed Hattersley that Beadle's property had been sold, but the trial court could set the sale aside. Hattersley shared his opinion that it was likely State Farm would deny the tender of defense by HOA and FRES, but he invited Vance to let him know of any new information. Hattersley prepared a coverage memo, summarizing Beadle's allegations and concluding that there was no potential coverage under Coverage L and Option DO.

Hattersley was not aware of a dispute about whether FRES was an additional insured under HOA's policy. State Farm did not offer a policy that included a property manager under Option DO of a condominium policy. Nevertheless, Hattersley testified it would not have made a difference in the first Beadle lawsuit if FRES was an insured under Option DO because there was no claim for damages that was covered under that provision.

State Farm denied HOA and FRES's tender of defense. Its denial letter asked HOA and FRES to provide State Farm with any additional information regarding the lawsuit, but Hattersley did not receive any further information from HOA or FRES. The Beadle lawsuit concluded after the trial court sustained demurrers to the complaint without leave to amend.

Beadle filed a complaint against HOA, FRES, Allied Trustee Services and Sutter Capital Group, LP on May 5, 2014, to set aside a foreclosure sale, cancel the trustee's deed and quiet title, and for an accounting and injunctive relief against an unlawful detainer action filed by Sutter Capital Group, LP against Beadle. The complaint alleged that Allied Trustee Services caused Beadle's property to be sold at auction and that Sutter Capital Group, LP purchased the property and obtained a trustee's deed upon sale. Beadle claimed the assessments against her were improper and the trustee's deed upon sale was wrongfully executed. She sought an order restoring possession of her property and damages.

HOA and FRES tendered the defense of the second Beadle lawsuit to State Farm under HOA's policy. Hattersley reviewed that claim. He spoke with HOA's attorney Rod Baydaline regarding the matter. Hattersley told Baydaline it appeared the Beadle complaint did not seek bodily injury, property damage, personal injury or advertising injury damages under Coverage L, but there may be coverage under Option DO triggering a duty to defend. He also said it was unlikely FRES would qualify as an insured under Option DO. Hattersley prepared a detailed summary of the complaint and a coverage memoranda with his recommendations.

State Farm agreed to defend HOA against the second Beadle lawsuit, but denied the tender for FRES. The denial letter invited FRES to provide State Farm with any new or additional information affecting the coverage decision. Baydaline did not provide additional information regarding the claim.

On August 18, 2014, Beadle amended her complaint to add a cause of action for elder abuse. FRES's business attorney Sharon Futerman notified State Farm of the amendment. Hattersley reviewed the amended pleading and prepared a coverage memo. He determined the new cause of action did not give rise to a potential for coverage under Coverage L and State Farm did not have a duty to defend FRES. Accordingly, State

6

Farm denied FRES's tender of defense for the first amended complaint. State Farm's denial letter to FRES again solicited additional information relating to FRES's claim.

State Farm continued to defend HOA against the second Beadle lawsuit. That lawsuit was eventually dismissed following successful demurrers.

On August 12, 2015, HOA and Frei filed an amended complaint against State Farm and Lewis for breach of contract, breach of the covenant of good faith and fair dealing, violation of Business and Professions Code section 17200, and declaratory relief, based on the tenders of defense for the first and second Beadle lawsuits.

The parties waived a jury trial. At the court trial they called witnesses including Frei, Lewis, Bruns, Budelli, Machen, Hattersley, Vance, and Baydaline, and presented expert testimony regarding insurance coverage and claims handling and the standard of care for an insurance agent. The trial court issued a statement of decision and entered judgment in favor of State Farm and Lewis and against HOA and Frei. HOA and Frei appeal from the judgment.

The trial court entered a second amended judgment following its ruling on State Farm and Lewis's memorandum of costs and HOA and Frei's motion to tax costs. (A first amended judgment mistakenly indicated that HOA and Frei were entitled to recover interest.) HOA appeals from the second amended judgment.

DISCUSSION

I

HOA and Frei challenge the trial court's conclusion that State Farm did not owe a duty to defend against the first lawsuit because Beadle's complaint did not seek a potential claim for covered damages.

An insurer must defend its insured against a claim which, at the time of tender, potentially seeks damages within the coverage of its policy. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295; *Atlantic Mutual Ins. Co. v. J. Lamb, Inc*. (2002) 100 Cal.App.4th 1017, 1038 (*Atlantic Mutual*) [the duty to provide a defense

7

depends on the existence of a potential for coverage at the time of tender].)  Because the defense obligation is measured by the kinds of risks covered by the policy, "[t]he determination whether [an] insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint [against the insured] with the terms of the policy." (*Waller v. Truck Ins. Exchange, Inc*. (1995) 11 Cal.4th 1, 19 (*Waller*); see *Montrose,* at p. 295.)  The focus is on whether facts alleged in the complaint against the insured or fairly inferable therefrom or facts extrinsic to the complaint which were known to the insurer at the time of tender reveal a possibility that the claims against the insured may be covered by the policy.  (*Albert v. Truck Ins. Exchange* (2018) 23 Cal.App.5th 367, 377-378; *Atlantic Mutual,* at p. 1034; *Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1114 (*Gunderson*).)  The duty to defend applies even to claims that are groundless, false or fraudulent.  (*Waller,* at pp. 19, 37; see *Montrose,* at p. 295 [the duty to defend may exist even where coverage is in doubt and ultimately does not develop].)  Any doubt as to whether the duty to defend exists is resolved in favor of the insured.  (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081; *CNA Casualty of California v. Seaboard Surety Co*. (1986) 176 Cal.App.3d 598, 607 (*CNA*).)

Whether an insurance policy provides a potential for coverage and, thus, a duty to defend is a question of law governed by the interpretation of the policy.  (*Waller, supra,* 11 Cal.4th at p. 18.)  We review the trial court's interpretation of an insurance policy de novo.  (*Pulte Home Corp. v. American Safety Indemnity Co*. (2017) 14 Cal.App.5th 1086, 1104, 1119 (*Pulte*); *Vons Companies, Inc. v. United States Fire Ins. Co*. (2000) 78 Cal.App.4th 52, 57-58 (*Vons*).)  We apply rules governing the interpretation of contracts to construe insurance agreements.  (*Pulte,* at p. 1105.)  Our primary goal is to give effect to the mutual intention of the parties at the time the contract is formed.  (*Ibid*.)  We infer such intent solely from the written provisions of the contract, if possible.  (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822 (*AIU Ins. Co.*).)

8

We look to the language of the policy and endorsements and interpret the words used according to their ordinary meaning, unless the terms are used in a technical sense or a special meaning is given to them by usage. (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115; *Waller, supra,* 11 Cal.4th at p. 18.) We interpret the policy as a whole, reading its provisions in context and giving effect to every provision where possible. (*Palmer,* at p. 1115; *Vons, supra*, 78 Cal.App.4th at p. 58.)

The language of policy governs if it is clear and explicit. (*Pulte, supra*, 14 Cal.App.5th at p. 1105.) If there is ambiguity, we interpret the ambiguous provision in the sense the insurer believed the insured understood the provision at the time of formation. (*AIU Ins. Co., supra,* 51 Cal.3d at p. 822; *Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263, 274 [we interpret policy provisions according to a layperson's reasonable expectations]; *Pulte,* at pp. 1105-1106 [when the insurer is responsible for ambiguous policy language, we construe the language in favor of the insured's reasonable expectations].) This rule protects the objectively reasonable expectations of the insured. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265 (*Bank of the West*).) Whether an insured's expectation of a defense is objectively reasonable is a question of law we independently determine. (*Cutler-Orosi Unified School Dist. v. Tulare County School etc. Authority* (1994) 31 Cal.App.4th 617, 627 (*Cutler-Orosi*).)

A policy provision is ambiguous when it is capable of two or more constructions, both of which are reasonable. (*Waller, supra*, 11 Cal.4th at p. 18.) We interpret language in a policy as a whole and in context and in the circumstances of the case and will not strain to create an ambiguity where none exists. (*Id.* at pp. 18-19; *First American Title Ins. Co. v. XWarehouse Lending Corp.* (2009) 177 Cal.App.4th 106, 114-115 (*First American Title Ins. Co.*).) If we cannot resolve an ambiguity by interpreting the provision in the sense in which the insurer believed, at the time of making it, the insured understood it, we will resolve the ambiguity against the insurer and in favor of coverage.

9

(*Bank of the West, supra,* 2 Cal.4th at pp. 1264-1265; *AIU Ins. Co., supra,* 51 Cal.3d at p. 822; *Pulte, supra*, 14 Cal.App.5th at pp. 1105-1106.)

There is no duty to defend when the insurance policy premises the duty on a lawsuit seeking "damages" but the third party plaintiff's lawsuit does not seek compensatory damages. (*San Miguel Community Assn. v. State Farm General Ins. Co.* (2013) 220 Cal.App.4th 798, 801 (*San Miguel*); *Cutler-Orosi, supra,* 31 Cal.App.4th at pp. 629-633; *Ulta Salon, Cosmetics & Fragrance, Inc. v. Travelers Property Casualty Co. of America* (2011) 197 Cal.App.4th 424, 427, 432-433 [complaint seeking civil penalties and injunctive relief did not seek bodily injury damages under a policy]; *Nationwide Ins. Co. v. King* (S.D.Cal. 1987) 673 F.Supp. 384, 385 [policy expressly limiting coverage to damages did not cover complaint for injunction and declaratory relief]; see *United Pacific Ins. Co. v. Hall* (1988) 199 Cal.App.3d 551, 556 [policy that obligated the insurer to defend an action for damages did not require the defense of a criminal or administrative proceeding where damages were not sought]; *Jaffe v. Cranford Ins. Co.* (1985) 168 Cal.App.3d 930, 934 (*Jaffe*) [malpractice policy did not obligate insurer to defend a criminal prosecution because the case could not have resulted in damages payable under the policy].)

In *San Miguel*, members of the San Miguel Community Association sued the association and its board president for nuisance, breach of CC&Rs and breach of fiduciary duty. (*San Miguel, supra,* 220 Cal.App.4th at pp. 801-804.) The complaint and first amended complaint alleged that the plaintiffs had suffered irreparable injury which could not be compensated in damages and had no adequate remedy at law. (*Id.* at pp. 804-805.) The plaintiffs sought injunctive relief and punitive damages only, and did not seek any compensatory damages. (*Id.* at pp. 801, 804-805.) The association tendered the defense of the complaint and first amended complaint to its insurer, State Farm. (*Id.* at pp. 804-805.)

10

The business liability provision of the association's policy said that State Farm would pay those sums that the insured became legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury caused by an occurrence. (*San Miguel, supra,* 220 Cal.App.4th at p. 802.) The directors and officers liability provision of the policy covered sums the insured became legally obligated to pay as damages because of wrongful acts committed by an insured in the conduct of management responsibilities for the association. (*Ibid.*) State Farm would defend any claim or suit seeking damages payable under the policy. (*Ibid.*)

State Farm denied the association's claim. (*San Miguel, supra,* 220 Cal.App.4th at p. 805.) When the plaintiffs filed a second amended complaint alleging they had sustained damages, the association again tendered the defense to State Farm and State Farm ultimately agreed to provide a defense, but only for the second amended complaint. (*Id.* at pp. 805-806.) The association and its board president sued State Farm, alleging the latter breached the policy by refusing to reimburse defense costs incurred prior to the tender of the second amended complaint. (*Id.* at p. 801.)

The Court of Appeal affirmed the summary judgment in favor of State Farm, holding that when an insurance company issues a policy agreeing to indemnify its insured against third party claims for damages covered under the policy and to defend against claims seeking damages potentially payable under the policy, the insurer does not have a duty to defend the insured against a third party lawsuit seeking injunctive relief but no compensatory damages because such lawsuit is not a claim for damages under the policy. (*San Miguel, supra,* 220 Cal.App.4th at p. 800.) The appellate court said it was irrelevant that the third party plaintiffs might have suffered harm that could give rise to a claim for covered damages; what mattered was whether the third party plaintiffs sought to recover covered damages from the insured. (*Id.* at pp. 801, 807-808.) The appellate court rejected the claim that State Farm was required to infer additional claims that might have plausibly been included in the earlier pleadings when the allegations of the earlier

11

pleadings were inconsistent with the implication that the plaintiffs sought money damages. (*Id.* at p. 809.) In particular, a request for punitive damages did not require an inference that the third party plaintiffs sought compensatory damages when the first two complaints clearly did not. (*Id.* at pp. 809-810.)

In *Cutler-Orosi, supra,* 31 Cal.App.4th 617, third party plaintiffs sued certain school districts for violating the federal Voting Rights Act. (*Id.* at p. 622.) The lawsuits sought declaratory and injunctive relief, attorney's fees and costs and "such other additional relief at law or in equity as may be deem[ed] appropriate." (*Ibid.*) The appellate court held that the costs of complying with an injunction under the Voting Rights Act and any award of attorney's fees to the third party plaintiffs were not damages under the school districts' policy, which obligated to insurer to pay "all sums which the Insured shall become obligated to pay as damages . . ." (*Id.* at p. 621, italics omitted.) With regard to the prayer for "such other additional relief at law or in equity as may be deem[ed] appropriate," the appellate court said such prayer for relief did not impose a duty to defend because no form of damages was available in a Voting Rights Act lawsuit, the Eleventh Amendment prohibited actions in federal court for damages against a state agency, and the complaint did not allege any facts which, if proven, would entitle the third party plaintiffs to compensation for bodily injury or property damage. (*Id.* at p. 633.) A conjectural possibility of an award for damages based on the inherent power of a court of equity to award money damages did not give rise to a duty to defend. (*Ibid.*)

The parties here identified two provisions of HOA's policy relevant to Beadle's claims: Coverage L and Option DO. The language of those provisions is the same as the State Farm policy at issue in *San Miguel*. (*San Miguel*, *supra*, 220 Cal.App.4th at p. 802.) Under Coverage L, State Farm agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury to which" the policy applied. State Farm had a "duty to defend any claim or suit seeking damages payable under this policy. . . ." Under

12

Option DO, State Farm agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'wrongful acts' committed by an insured solely in the conduct of their management responsibilities for the Condominium/Association."

Accordingly, HOA's policy obligated State Farm to indemnify its insured for damages to which the policy applied and to defend any claim seeking damages payable under the policy. The policy did not define damages. But the fact that a term is not defined in the policy does not make it ambiguous. (*First American Title Ins. Co., supra,* 177 Cal.App.4th at pp. 114-115.) Statutory and dictionary definitions of damages "requires there to be 'compensation,' in 'money,' 'recovered' by a party for 'loss' or 'detriment' it has suffered through the acts of another." (*AIU Ins. Co., supra,* 51 Cal.3d at pp. 826; see also Civ. Code, § 3281 [defining damages as compensation in money a person who suffers detriment from the unlawful act or omission of another may recover from the person in fault]; *Jaffe, supra,* 168 Cal.App.3d at p. 935 [" 'Damages' describes a payment made to compensate a party for injuries suffered."].) For Option DO, the policy also clearly stated there was no coverage for "damages other than money damages." The first Beadle action did not seek monetary compensation from HOA and/or FRES.

HOA and Frei claim the complaint included allegations about restitution, usury, and an accounting which potentially gave rise to money damages. They say the facts alleged in the complaint clearly indicated to the parties that Beadle was seeking damages from a wrongful foreclosure. But the complaint in the first Beadle lawsuit sought a court declaration of rights and duties regarding the pending foreclosure sale and that Beadle did not breach the CC&Rs; an injunction stopping the foreclosure sale; and an order requiring FRES and Allied Trustee Services to make their records available for an accounting. HOA and Frei do not cite any portion of the record and we found nothing in the complaint alleging restitution. We will not consider claims made without citation to the record. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) The complaint did not seek damages for a wrongful foreclosure. In fact, the foreclosure sale had not occurred at

13

the time the complaint was filed.  Regardless of whether the relief Beadle sought was equitable or legal in nature or whether her complaint mentioned usury or an accounting, the complaint in the first Beadle action did not seek monetary compensation against HOA or FRES.  And unlike *AIU Ins. Co.,* cited at pages 29 to 30 of appellants' opening brief, where the insured sought coverage for costs associated with complying with injunctions requiring the insured to clean up hazardous waste, there is no indication in this record that the first lawsuit would require HOA or FRES to incur compliance costs.  (*AIU Ins. Co., supra*, 51 Cal.3d at pp. 837-842.)

Beadle's prayer for attorney's fees and costs also did not seek "damages."  First, the supplementary payments provision of HOA's policy obligated State Farm to pay, with respect to any lawsuit it defends, "all costs taxed against the insured in the suit." Attorney's fees are an element of costs a prevailing party may be entitled to recover in a civil action.  (Code Civ. Proc., §§ 1032, subd. (b), 1033.5, subd (a)(10).)  Reading the term "damages" in the policy to include attorney's fees and costs would render the supplementary payment provision superfluous.  (*Cutler-Orosi, supra*, 31 Cal.App.4th at pp. 631-632.)  We must read the insurance policy as a whole, so as to give effect to every part, if reasonably practicable and avoid a construction of one clause which would render another clause in the same contract surplusage.  (Civ. Code, § 1641; *Berg v. MTC Electronics Technologies Co.* (1998) 61 Cal.App.4th 349, 361.)  Further, "[a]n award of attorney fees does not compensate a plaintiff for the injury that brought the plaintiff into court; [for that reason,] attorney fees are inconsistent with the meaning of the word "Damages" in the ordinary and popular sense. . . .  [I]f the entire action alleges no covered wrongful act under the policy, coverage cannot be bootstrapped based solely on a claim for attorney fees."  (*Health Net, Inc. v. RLI Ins. Co.* (2012) 206 Cal.App.4th 232, 256-257; see also *Cutler-Orosi, supra*, 31 Cal.App.4th at p. 632.)

HOA and Frei also argue that defense counsel Natalie Vance's statements to State Farm representative Mark Hattersley triggered the duty to defend.  Vance told Hattersley

14

the foreclosure sale had already occurred, Vance thought Beadle would amend her complaint to allege damages because the property sold for significantly less than its value, and the potential damages claim could be the difference between the value of Beadle's condominium and what the condominium was sold for. Vance testified that Beadle had alleged violations of the nonjudicial foreclosure statutes and Beadle could allege a wrongful foreclosure action and seek damages.

The duty to defend does not arise from speculation about unpled third party claims or how a third party plaintiff might amend her complaint against the insured. (*Friedman Prof. Management Co., Inc. v. Norcal Mutual Ins. Co.* (2004) 120 Cal.App.4th 17, 34-35 (*Friedman*); *Low v. Golden Eagle Ins. Co.* (2002) 99 Cal.App.4th 109, 113-114 (*Low*); *Gunderson, supra,* 37 Cal.App.4th at pp. 1114, 1116-1117; *Hurley Construction Co. v. State Farm Fire & Casualty Co.* (1992) 10 Cal.App.4th 533, 538-539 (*Hurley*).) While Vance testified she had spoken to Beadle one time, she did not testify that Beadle ever said she was seeking monetary compensation from the defendants. Neither the allegations in the complaint in the first Beadle lawsuit nor the facts that Machen or Vance made known to Hattersley indicated that Beadle was seeking monetary compensation for a loss allegedly caused by HOA or FRES.

HOA and Frei next assert that in opposing the demurrer in the first Beadle action, Beadle made clear she was claiming damages for wrongful foreclosure, potential eviction and displacement from her property. The opposition was filed on September 19, 2013, after State Farm had denied HOA and FRES's tender of defense of the first Beadle lawsuit. HOA and Frei do not cite any portion of the record showing that State Farm had knowledge of any assertions Beadle made in her opposition to the demurrer. The duty to defend is determined from the facts and inferences known to the insurer at the time of the tender of defense. (*Atlantic Mutual, supra,* 100 Cal.App.4th at p. 1038; *Hurley, supra,* 10 Cal.App.4th at p. 538; *CNA, supra,* 176 Cal.App.3d at p. 610.) HOA and Frei fail to

15

show that Beadle's opposition to a demurrer required State Farm to defend the first Beadle action.

Moreover, while Coverage L applied to damages because of bodily injury, property damage, personal injury or advertising injury, the first Beadle lawsuit did not seek damages because of such injuries. The policy defined "bodily injury" as "bodily injury, sickness or disease sustained by a person." "Property damage" was physical injury to or destruction of tangible property or loss of use of tangible property that was caused by physical injury to or destruction of other tangible property. "Advertising injury" was injury arising out of the publication of material which slandered or libeled a person or organization, disparaged a person's or organization's goods, products or services or violated a person's right to privacy; misappropriation of advertising ideas or style of doing business; or infringement of copyright, title or slogan. The complaint in the first Beadle action did not allege bodily injury, property damage or advertising injury.

The complaint also did not allege "personal injury." Of relevance, the policy defined "personal injury" as "the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." The phrase "committed by or on behalf of its owner, landlord or lessor" means the wrongful act -- eviction, entry or invasion of right -- was done by or on behalf of an owner, landlord or lessor of the property. (*Liberty Corporate Capital Ltd. v. Peacemaker National Training Ctr., LLC* (N.D.W.Va. 2018) 348 F.Supp.3d 585, 593; *Allstate Ins. Co. v. McColly Realtors, Inc.* (N.D.Ind. 2017) 296 F.Supp.3d 947, 959; *Camp Richardson Resort, Inc. v. Philadelphia Indem. Ins. Co.* (E.D.Cal. 2015) 150 F.Supp.3d 1186, 1194; *Westfield Ins. Co. v. Pinnacle Group, LLC* (S.D.W.Va. 2015) 137 F.Supp.3d 912, 919 & fn. 4; *Hartford Fire Ins. Co. v. Gandy Dancer, LLC* (D.N.M. 2013) 981 F.Supp.2d 981, 1017-1018.)

Beadle alleged she was the owner of the subject condominium and had "full interest by Grant Deed." HOA and Frei do not cite any portion of the record showing

16

State Farm knew of facts indicating that HOA or FRES was the owner, landlord or lessor of Beadle's condominium.  The first Beadle lawsuit did not involve a possibly covered "personal injury" claim because facts known to State Farm at the time of tender did not show that alleged wrongdoers HOA and FRES were the owners, landlords or lessors of Beadle's condominium.[1]  There is no objectively reasonable expectation of coverage where Beadle did not seek damages for "personal injury" as defined in HOA's policy. (*Lyons v. Fire Ins. Exchange* (2008) 161 Cal.App.4th 880, 885 [an insured could not reasonably expect a defense of claims that were based on risks clearly not covered under the policy]; *Hurley, supra*, 10 Cal.App.4th at p. 539.)

In sum, the complaint in the first Beadle lawsuit and the facts made known to State Farm at the time of tender did not show that Beadle sought damages because of bodily injury, property damage, personal injury or advertising injury within the meaning of HOA's policy.  Accordingly, State Farm had no duty to defend HOA and/or FRES against the first Beadle complaint.

## II

HOA and Frei also urge that FRES should be deemed an insured under Option DO because HOA had a reasonable expectation that FRES would be covered under that provision based on the following:  (1) the declarations page for HOA's policy listed "Additional Insured" and "Dir. & Officers" under "Forms, Options, and Endorsements;"

---

[1] We reach the same conclusion with regard to the second Beadle lawsuit and FRES's tender of the defense of that lawsuit because the complaint in the second lawsuit alleged that Beadle was the sole owner of the condominium and in May 2014, Baydaline informed Hattersley HOA was never the owner, landlord or lessor of Beadle's condominium.  Inasmuch as there was no wrongful act with regard to Beadle's condominium "committed by or on behalf of its owner, landlord or lessor" and, thus, no potential "personal injury" coverage for the second Beadle lawsuit, we need not consider HOA and Frei's further claim that facts alleged in the complaint in the second Beadle lawsuit potentially involved an "invasion of the right of private occupancy" and "wrongful eviction."

17

(2) State Farm, through Lewis, had a contractual duty to provide Option DO coverage to FRES; (3) the implied covenant of good faith and fair dealing required including FRES on HOA's Option DO coverage; and (4) the representations on the declarations page of HOA's policy justify the application of promissory estoppel against State Farm. Under Option DO, State Farm agreed to pay those sums the insured becomes legally obligated to pay as damages because of wrongful acts committed by an "insured" in the conduct of management responsibilities for HOA. HOA's policy limited the term "insured" to (a) the named insured's directors or officers, provided the individual (1) was duly elected by the unit owners to serve on the managing body of HOA and (2) acted within the scope of his or her duties on behalf of the named insured; (b) the named insured's members, with respect to activities they performed on the named insured's behalf as a member of a committee appointed by the administrative or managing body of HOA; or (c) the named insured shown on the declarations page. The copies of declarations pages which are in the record identified HOA and not FRES as the named insured. Counsel for HOA and FRES informed State Farm that the property manager was not a member of HOA's board of directors or any committee for HOA. HOA and Frei do not cite any portion of the record showing FRES was an insured within the meaning of the Option DO provision or that at the time of tender State Farm knew of any facts indicating FRES was an insured under that provision.

HOA and Frei argue the declarations page for HOA's policy clearly showed FRES was an additional insured under Option DO. We disagree. The "Forms, Options, and Endorsements" section of the copies of the declarations pages which are in the record listed "Additional Insured" and "Dir and Officers," among other things. But the declarations pages did not mention FRES. Those pages also did not indicate that "Additional Insured" related to "Dir and Officers" or Option DO.

HOA and Frei also argue that State Farm, through its agent Lewis, had a contractual duty to provide FRES Option DO coverage because Lewis admitted he had a

18

duty to suggest that FRES be added as an additional insured on HOA's policy when he became aware of FRES's status as HOA's new property manager. While Lewis testified he would have recommended FRES be added to HOA's policy as an additional insured, Lewis did not say he had an obligation to make that recommendation or that he had a duty to recommend Option DO coverage for FRES. And contrary to the assertion in HOA and Frei's appellate opening brief that insurance expert Jeffrey McKinley agreed Lewis had a duty to add FRES as an insured, McKinley testified that Lewis did not owe FRES any duty and Lewis had no duty to initiate contact with HOA to advise how its policy covered the property managers.

HOA and Frei further assert that State Farm had a duty to provide FRES coverage under Option DO because Bruns from Lewis's office promised to include FRES as an additional insured without any restrictions. But the alleged promise by Bruns was made in June 2014, long after State Farm had denied the tender of defense for the first Beadle action and after HOA and FRES had tendered the defense of the second Beadle action to State Farm. Therefore, it cannot be the basis of any contractual duty with regard to the Beadle lawsuits. Moreover, Bruns' June 2014 statement that she would submit a request to State Farm's underwriters to add FRES as an additional insured on HOA's policy did not reference Option DO. Machen testified that Bruns agreed in her June 2014 e-mail that Bruns would add FRES to HOA's policy as an additional insured. State Farm included FRES as an additional insured on HOA's policy effective June 3, 2014. Machen did not testify that Bruns promised to add FRES to the Option DO provision. There is no evidence that State Farm or its agents promised to provide Option DO coverage to FRES.

Moreover, HOA and Frei argue State Farm breached an implied covenant of good faith and fair dealing by not providing Option DO coverage to FRES. The law implies in every contract a covenant of good faith and fair dealing. (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818.) "[T]he covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct

19

that frustrates the other party's rights to the benefits of the agreement." (*Waller, supra*, 11 Cal.4th at p. 36.) "Absent [a] contractual right, however, the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.' " (*Ibid.*) As we have explained, FRES was not an insured under the Option DO definition of that term. HOA and Frei fail to show the existence of a contract requiring State Farm or Lewis to include FRES as an insured under the Option DO provision of HOA's policy. Consequently, we reject their implied covenant claim. (See *ibid.* [there can be no action for breach of the implied covenant of good faith and fair dealing when there is no potential for coverage]; *Baldwin v. AAA Northern California, Nevada & Utah Ins. Exchange* (2016) 1 Cal.App.5th 545, 557 [insurer did not breach the implied covenant of good faith and fair dealing where its conduct was consistent with the express provisions of the contract]; *Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1469-1470 [bad faith claim fails as a matter of law where the plaintiff had no viable breach of contract claim]; *1231 Euclid Homeowners Assn. v. State Farm Fire & Casualty Co.* (2006) 135 Cal.App.4th 1008, 1021 [insurer's failure to pay benefits under its policy cannot serve as a basis for a bad faith claim where it did not owe policy benefits to the insured].)

Citing *Cicone v. URS Corp.* (1986) 183 Cal.App.3d 194, HOA and Frei contend that Lewis had a duty to bring up problems with the Option DO coverage because Lewis's agency was communicating with Frei. *Cicone* is not an insurance coverage case. In *Cicone*, the attorney for the seller of a business sued the buyer, its president and the attorney of the buyer, alleging that the latter made a promise without disclosing they did not intend to perform. (*Id.* at pp. 198-199, 201.) In the context of a fraud cause of action, the appellate court held that an attorney may not engage in fraudulent conduct toward another attorney, even if the two were negotiating at arms' length for their clients. (*Id.* at pp. 201-202.)

There is no fraud cause of action in this case. Nothing in the record shows that Mr. Frei ever discussed Option DO coverage with Lewis. Mr. Frei testified he never called Lewis prior to the Beadle actions. Lewis testified that Mr. Frei and his employees never called Lewis to ask questions about coverage.

Citing *Eddy v. Sharp* (1988) 199 Cal.App.3d 858, HOA and Frei say State Farm's position that FRES was not covered under Option DO deprived HOA of the protection for which it had paid premiums. *Eddy* is inapposite because that case involved an express representation about coverage. (*Id.* at pp. 862-863.) In the context of a negligent misrepresentation cause of action, the appellate court in *Eddy* said the insurance agent had a duty to accurately inform the insureds of the policy's provisions, and representations in the agent's cover letter to the insureds raised a triable issue of material fact about whether the agent had misrepresented the terms of the policy. (*Id.* at pp. 863-866.) HOA and Frei do not point to any portion of the record containing any representations by State Farm or Lewis that Option DO coverage applied to FRES.

HOA and Frei further claim the doctrine of promissory estoppel requires State Farm to provide Option DO coverage to FRES. The elements of promissory estoppel include the following: (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) reliance that is reasonable and foreseeable; and (4) injury to the party asserting estoppel arising from the reliance. (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 416; *Cooper v. State Farm Mutual Automobile Ins. Co.* (2009) 177 Cal.App.4th 876, 892, fn. 3.) Estoppel cannot be established without a promise upon which the plaintiff relied to his or her prejudice. (*Granadino,* at p. 417.) HOA and Frei claim the declarations page listing "Additional Insured" and "Dir & Officers" under "Forms, Options, and Endorsements" constituted a promise that FRES had Option DO coverage. We disagree. Unlike the certificates of insurance in *Santana Row Hotel Partners, L.P. v. Zurich America Ins. Co.* (N.D.Cal. 2006) 446 F.Supp.2d 1108, 1109-1110, 1113-1114, a case HOA and Frei cite, the

21

declarations pages for HOA's policy do not mention FRES nor make any promises or representations in clear and unambiguous terms that FRES was covered under Option DO.

To the extent HOA and Frei rely on testimony that there were 2009 letters by Mr. Frei addressed to Lewis requesting that FRES be included as an additional insured on HOA's policy, the trial court did not believe Mr. Frei's testimony that he sent the letters in 2009 and instead credited Lewis and Bruns' testimony that they did not receive the letters. On appeal, we do not resolve conflicts in the evidence, weigh the evidence, or consider the credibility of witnesses. (*Phillips v. Standard Accident Ins. Co.* (1960) 180 Cal.App.2d 474, 480.) We only determine whether there is any substantial evidence to support the trial court's findings. (*Ibid.*) The testimony of Lewis and Bruns support the trial court's findings with regard to the 2009 letters. The fact that contrary evidence was presented in the trial court does not help HOA and Frei on appeal. (*Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 922-923.) Based on the trial court's findings, *Westrick v. State Farm Insurance* (1982) 137 Cal.App.3d 685, another case HOA and Frei cite, is factually distinguishable. There is no evidence that, prior to the Beadle lawsuits, HOA or Frei asked Lewis about coverage for FRES under HOA's policy and that Lewis failed to explain the terms and limits of coverage under the policy.

HOA and Frei also argue that Lewis and Bruns could not rule out the possibility that Pam Philips, another person who worked for Lewis, received the 2009 letters from Frei. But the trial court did not credit Mr. Frei's testimony that he sent the letters. Lewis testified Philips did not mention letters from Frei in 2009 and he was confident that if his office had received such letters, they would have been presented to him.

HOA and Frei fail to establish that FRES should be deemed an insured under the Option DO provision of HOA's policy for purposes of the first and/or second Beadle lawsuit.

22

HOA and Frei next claim State Farm failed to reimburse HOA for post-tender expenses it incurred in defending against the second Beadle lawsuit.

Contrary to HOA and Frei's claim on appeal, the trial court addressed whether State Farm failed to pay the post-tender expenses. The trial court found HOA and Frei failed to prove that HOA had presented State Farm with a clear statement of what must be reimbursed. The trial court said the billing records presented at trial included charges for different clients, matters, time periods and purposes. Accordingly, it concluded HOA and Frei failed to prove by a preponderance of the evidence that State Farm had unreasonably delayed in reimbursing HOA for attorney's fees and costs it had incurred in the second Beadle lawsuit.

We review the trial court's factual findings for substantial supporting evidence. (*Pulte, supra*, 14 Cal.App.5th at p. 1119.) Substantial evidence supports the trial court's finding. HOA and Frei claim on appeal that they incurred $5,765 in fees and costs after they tendered the defense of the second Beadle action and before State Farm picked up HOA's defense. That total appears to be derived from the page marked Auburn 0285 in Exhibit 39. But the page marked Auburn 0285 bears a different statement number than the page marked Auburn 0284, and there is no explanation for the charges shown on Auburn 0285. Additionally, some of the trial exhibits cited in the appellate opening brief do not relate to costs incurred in defending HOA against the second Beadle lawsuit. As plaintiffs, HOA and Frei bore the burden of establishing the elements of their cause of action against State Farm. (Evid. Code, § 500; *Cassady v. Morgan, Lewis & Bockius LLP* (2006) 145 Cal.App.4th 220, 234.) HOA and Frei failed to prove what attorney's fees and costs HOA had incurred in the second Beadle lawsuit.

In a different section of their appellate opening brief, HOA and Frei cite *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550 for the proposition that State Farm bore the burden of showing that

any entries in Baydaline's billing statement were unrelated to the defense of HOA in the second Beadle lawsuit. But *Premier* is factually distinguishable. The defendants who obtained an award of attorney's fees in *Premier* submitted declarations explaining the different tasks performed by attorneys for members of a joint defense group and billing records in support of the defendants' fees request. (*Id.* at pp. 555, 559-560, 562-564.) The plaintiffs did not file any declarations in opposition to the fees request nor challenge the evidence presented by the defendants. (*Id.* at p. 560.) Here, Exhibit 39 did not establish HOA and Frei's claim of $5,765 in post-tender fees and costs, and State Farm challenged the evidence supporting HOA's claim of fees. The argument advanced by HOA and Frei lacks merit.

IV

HOA and Frei maintain that Lewis breached a contract with HOA by failing to place FRES as an additional insured on all liability coverages for HOA's policy and by failing to alert HOA and Frei that it was not possible to include FRES under the Option DO coverage.

A cause of action for breach of contract requires proof of (1) the existence of a contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) resulting damage to the plaintiff. (*Abdelhamid v. Fire Ins. Exchange* (2010) 182 Cal.App.4th 990, 999.) HOA and Frei suggest Lewis had a contractual obligation to add FRES to HOA's policy in 2009, but they do not cite any portion of the record showing the existence of a contract between Lewis and HOA requiring Lewis to add FRES to all coverages on HOA's policy or to alert HOA's property manager about lack of Option DO coverage. Lewis did not agree that he had a duty to add FRES as an additional insured on HOA's policy in the portion of the reporter's transcript HOA and Frei cite. HOA and Frei fail to demonstrate that they established an essential element of their breach of contract claim.

24

V

HOA and Frei further assert that State Farm breached the covenant of good faith and fair dealing in making its coverage determinations.

Breach of the covenant of good faith and fair dealing involves something beyond breach of the terms of the insurance contract. (*Chateau Chamberay Homeowners Assn. v. Associated International Ins. Co.* (2001) 90 Cal.App.4th 335, 345.) It requires a showing that the insurer acted unreasonably or without proper cause. (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 724, fn. 7; *Chateau Chamberay,* at pp. 347-348 & fn. 7; *Dalrymple v. United Services Auto. Assn.* (1995) 40 Cal.App.4th 497, 512, 520 (*Dalrymple*); *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1151.) But there is no breach of the implied covenant of good faith and fair dealing if there is no obligation to defend or indemnify. (*Waller, supra*, 11 Cal.4th at p. 36; *Love,* at p. 1152; *Pulte, supra*, 14 Cal.App.5th at p. 1119 [" '[N]othing obligates insurance companies to pay "noncovered" claims . . . .' "]; *Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1078.) This is because the implied covenant is based on the contractual relationship between the insured and the insurer. (*Waller,* at p. 36.) In the absence of a contractual right, "the implied covenant has nothing upon which to act as a supplement," and there is no implied covenant. (*Ibid.*)

Whether the insurer breached the implied covenant of good faith and fair dealing is ordinarily a question of fact. (*Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 86; *Dalrymple, supra*, 40 Cal.App.4th at p. 511.) Where bad faith is resolved as a factual issue, we review the judgment under the substantial evidence standard. (*Dalrymple,* at p. 511.)

HOA and Frei claim State Farm breached the covenant of good faith and fair dealing by reading the complaint in Beadle's first lawsuit in a restrictive and unreasonable manner, refusing to include facts gleaned from its investigation in its coverage analysis and mischaracterizing Vance's comments to Hattersley as confirming

25

that Beadle did not allege damages. The trial court rejected those claims. It found that Hattersley thoroughly and correctly analyzed Beadle's complaint. Substantial evidence supports that finding.

In evaluating the tender of the first Beadle action, Hattersley spoke with Machen and Vance. Hattersley described those conversations in his case notes and coverage memo. Hattersley and Vance testified about their single conversation. Hattersley's contemporaneous notes of that conversation supported his trial testimony. His testimony and notes are substantial evidence supporting the trial court's rejection of HOA and Frei's claim that Hattersley mischaracterized Vance's comments to him. Additionally, as we have explained, Beadle's complaint in the first lawsuit did not seek money damages from HOA or FRES, and State Farm was not required to speculate about how Beadle might amend her complaint. (See *Friedman, supra,* 120 Cal.App.4th at pp. 34-35; *Low, supra,* 99 Cal.App.4th at pp. 113-114; *Gunderson, supra,* 37 Cal.App.4th at pp. 1114, 1116-1117; *Hurley, supra,* 10 Cal.App.4th at p. 538-539.) HOA and Frei fail to demonstrate error with regard to their breach of the implied covenant claim.

HOA and Frei also claim that State Farm breached the implied covenant of good faith and fair dealing by failing to reimburse HOA for post-tender attorney's fees and costs in the second Beadle lawsuit. As discussed in part III, HOA and Frei failed to prove their claim relating to unpaid post-tender attorney's fees and costs. HOA and Frei have not demonstrated that State Farm acted unreasonably or without good cause where HOA and Frei did not prove they presented State Farm with a clear claim for reimbursement.

## VI

In addition, HOA and Frei contend the trial court erred in denying their motion to tax the expert witness fees State Farm and Lewis sought to recover under section 998.

To encourage the settlement of lawsuits prior to trial, section 998 authorizes a party to serve a written offer to compromise on another party and to allow judgment

26

to be taken in accordance with the terms and conditions stated in the offer. (§ 998, subds. (a)-(c); *Prince v. Invensure Ins. Brokers, Inc.* (2018) 23 Cal.App.5th 614, 621-622 (*Prince*).) The statute provides disincentives for rejecting a reasonable pretrial offer of settlement. The trial court may require a plaintiff, who does not accept a valid section 998 offer and then fails to obtain a more favorable judgment, to pay a defendant's reasonable postoffer expert witness costs. (§ 998, subd. (c)(1).)

Prior to the trial, State Farm and Lewis made a written settlement offer under section 998 to HOA. The offer explained how HOA may accept State Farm and Lewis's offer: "If you accept this offer, please: [¶] a) Date and sign the Agreement attached hereto as Exhibit A; [¶] b) Have your legal counsel execute a Request for Dismissal in a form identical to that attached hereto as Exhibit B; [¶] c) Send the signed Agreement and signed Request for Dismissal to counsel for defendants, who will then file the Request for Dismissal with the Court; and [¶] d) Execute, by and through your counsel, the statement of acceptance of this offer that appears below and return the same to attorneys for defendants indicating that the Offer to Compromise is accepted pursuant to the terms and conditions outlined above." The offer included a document which read, "<u>STATEMENT OF ACCEPTANCE OF OFFER TO COMPROMISE</u> [¶] In accordance with Code of Civil Procedure section 998, subdivision (b), plaintiff Auburn Woods I HOA hereby accepts Defendants' Offer to Compromise pursuant to the terms and conditions set forth in that offer." The statement concluded with a signature block for counsel for HOA.

HOA and Frei claim State Farm and Lewis's section 998 offer to HOA was defective because it did not identify the accepting party in the signature line. We independently review whether a section 998 offer is valid. (*Prince, supra,* 23 Cal.App.5th at p. 622; *Rouland v. Pacific Specialty Ins. Co*. (2013) 220 Cal.App.4th 280, 285 (*Rouland*).) We apply general contract principles in interpreting a section 998 offer when doing so does not conflict with the statute's purpose of encouraging the pretrial

27

settlement of lawsuits. (*Rouland,* at p. 285.) We interpret any ambiguity in the offer against the offeror and strictly construe the offer in favor of the party against whom section 998 is sought to be enforced. (*Sanford v. Rasnick* (2016) 246 Cal.App.4th 1121, 1129-1130 (*Sanford*).)

A section 998 offer must include a provision that allows the recipient to indicate acceptance of the offer by signing a statement that the offer is accepted. (§ 998, subd. (b).) Acceptance must be in writing and signed by counsel for the accepting party or, if not represented by counsel, by the accepting party. (§ 998, subd. (b).) State Farm and Lewis's section 998 offer satisfies the statute's requirement that an offer specify the manner in which it is to be accepted and provide for a written acceptance to be signed by the offeree or its counsel. (*Rouland, supra,* 220 Cal.App.4th at p. 288 [section 998 does not require an offer to include a line for the party to sign]; *Whatley-Miller v. Cooper* (2013) 212 Cal.App.4th 1103, 1107, 1111 [approving acceptance that included a place for the attorney's signature].) Even if section 998 requires an offer to identify the accepting party in the signature line, the signature block in the Statement of Acceptance identified HOA.

HOA and Frei next contend the section 998 offer was defective because it included an overbroad and ambiguous settlement agreement and release. A section 998 offer must be sufficiently specific and certain to allow the offeree to evaluate the value of the offer and make a reasoned decision whether to accept it, and allow the trial court to determine whether a judgment is more favorable than the offer. (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 764-765 (*Fassberg*); *Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 801-802.) However, the inclusion of a release of claims does not necessarily render it ineffective under section 998. (*Ignacio v. Caracciolo* (2016) 2 Cal.App.5th 81, 88-90; *McKenzie v. Ford Motor Co.* (2015) 238 Cal.App.4th 695, 698-699, 706-707; *Valentino v. Elliott Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692, 694-695, 697-701; see *Chen v. Interinsurance Exchange of*

28

*the Automobile Club* (2008) 164 Cal.App.4th 117, 120, 122.)  An offer that requires the offeree to release all claims between the parties in the current action is effective under section 998.  (*Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259, 270-273 (*Linthicum*); *Goodstein v. Bank of San Pedro* (1994) 27 Cal.App.4th 899, 905, 907-908 (*Goodstein*).)

State Farm and Lewis's section 998 offer to HOA read, "[I]n full settlement of all claims . . . asserted by [HOA] in this action against [State Farm] or Frank Lewis or both . . . , defendants jointly offer to pay [HOA] the sum of Thirty-Five Thousand Dollars ($35,000) in exchange for the following: [¶] 1. Entry of a Request for Dismissal with Prejudice of [HOA's] entire action; and [¶] 2. Signing of the attached Settlement Agreement and Release ("Agreement") by [HOA's] authorized representative, which will forever end this case and the underlying disputes between [HOA] and each defendant." The settlement agreement attached to the section 998 offer includes a release which read, "[HOA] releases and forever discharges State Farm and Lewis . . . from any and all claims . . . arising out of the subject of the ACTION."  "ACTION" was defined as HOA and Frei's lawsuit against State Farm and Lewis in Placer County Superior Court case No. SCV0036315, which is the subject of this appeal.  The Civil Code section 1542 waiver in the proposed settlement agreement read, HOA "expressly waives and assumes the risk of any and all claims for damages related to the subject of the ACTION, which exists as of this date, but of which it is unaware, . . . and which, if known, would materially affect its decision to enter into this settlement, and further assumes the risk that it may suffer damages in the future which it does not now anticipate or suspect may occur as a result of any matter referred to herein, and therefore waives all rights under California Civil Code section 1542 . . . ."

The release language in this case is similar to that approved in *Fassberg, supra,* 152 Cal.App.4th 720.  The plaintiff in *Fassberg* agreed to "fully release" the defendant "from all claims, disputes and liabilities arising from, relating or in any way pertaining to the subject matter of the Action including . . . any actual or potential claim and all

29

disputes arising from or relating to . . . the Action." (*Id.* at p. 765.)  The appellate court in that case held the proposed release was not overbroad.  (*Id.* at p. 766.)  It noted that the release identified only two parties to the proposed settlement and was limited to that action.  (*Id.* at p. 767.)  Like in *Fassberg*, here the proposed release provided that HOA "releases and forever discharges State Farm and Lewis . . . from any and all claims . . . arising out of the subject of the ACTION."

Read in context and as a whole, State Farm and Lewis's section 998 offer and proposed settlement agreement were clearly limited to claims in the underlying lawsuit. The "Disclaimer of Liability" section of the proposed settlement agreement confirm this conclusion, stating that HOA "accepts payment of the sums specified in ¶ 2 of this Agreement as a full and complete compromise of matters involving disputed facts and issues related to the ACTION filed by [HOA] against Defendants . . . ."  Because it was limited to the present action, the proposed release did not invalidate State Farm and Lewis's offer for purposes of section 998.  (*Linthicum, supra,* 175 Cal.App.4th at pp. 270-273; *Goodstein, supra,* 27 Cal.App.4th at pp. 907-908; *Fassberg, supra*, 152 Cal.App.4th at pp. 766-767.)

HOA and Frei assert the section 998 offer was also invalid because it referred to an extraneous agreement that was not part of the offer.  The contention is meritless. State Farm and Lewis offered to pay HOA $35,000 in exchange for, among other things, HOA's acceptance of the settlement agreement that was actually attached to the offer to compromise.  Unlike in the *Sanford* case, here the proposed settlement agreement was attached to State Farm and Lewis's section 998 offer, and thus HOA was not required to guess about the terms and conditions.  (*Sanford, supra*, 246 Cal.App.4th at pp. 1125, 1130.)

HOA and Frei further argue that even if the section 998 offer was valid, the trial court should have apportioned the expert witness fees between HOA and FRES.  We agree with State Farm and Lewis that the claim is forfeited because HOA and FRES did

not raise the argument in the trial court.  (*Mepco Services, Inc. v. Saddleback Valley Unified School Dist.* (2010) 189 Cal.App.4th 1027, 1049, fn. 29; *Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1409.)

### DISPOSITION

The judgment is affirmed.  State Farm and Lewis shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


          /S/
MAURO, Acting P. J.



We concur:



      /S/
DUARTE, J.



      /S/
RENNER, J.

31

CERTIFIED FOR PARTIAL PUBLICATION<sup>*</sup>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| AUBURN WOODS I HOMEOWNERS ASSOCIATION et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> STATE FARM GENERAL INSURANCE COMPANY et al., <br><br> Defendants and Respondents. | C085749 <br><br> (Super. Ct. No. SCV0036315) <br><br><br> ORDER GRANTING REQUEST TO PUBLISH |

APPEAL from a judgment of the Superior Court of Placer County, Charles D. Wachob, Judge. Affirmed.

Hirsch Closson, Clifford E. Hirsch and Barrett B. Braun, for Plaintiffs and Appellants.

Pacific Law Partners, Sandra E. Stone and Andrew P. Collier, for Defendants and Respondents.

---

<sup>*</sup> Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I through V of the Discussion.

1

THE COURT:

The opinion in the above-entitled matter filed on September 29, 2020, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


FOR THE COURT:


_____/S/_____
MAURO, Acting P. J.


_____/S/_____
DUARTE, J.


_____/S/_____
RENNER, J.